## MITCHELL *v.* UNITED STATES ET AL.

No. 577.   Argued March 13, 1941.—Decided April 28, 1941.

*Messrs. Arthur W. Mitchell* and *Richard E. West-brooks* for appellant.

*Mr. J. Stanley Payne,* with whom *Mr. Daniel W. Knowlton* was on the brief, for the Interstate Commerce Commission, appellee.

84

86

*Mr. Wallace T. Hughes,* with whom *Messrs. Vernon W. Foster, Marcus L. Bell, E. C. Craig, C. S. Williston,* and *Erwin W. Roemer* were on the brief, for Frank O. Lowden, et al., appellees.

*Messrs. Jack Holt,* Attorney General of Arkansas; *Thomas S. Lawson,* Attorney General of Alabama, and *Silas C. Garrett, III,* Assistant Attorney General; *J. Tom Watson,* Attorney General of Florida, and *Lewis W. Petteway,* Assistant Attorney General; *Ellis Arnall,* Attorney General of Georgia, and *Linton S. Johnson,* Assistant Attorney General; *Hubert Meredith,* Attorney General of Kentucky; *Eugene Stanley,* Attorney General of Louisiana; *Greek L. Rice,* Attorney General of Mississippi; *W. F. Barry,* Solicitor General of Tennessee; *Gerald C. Mann,* Attorney General of Texas; and *Abram P. Staples,* Attorney General of Virginia, filed a brief on behalf of the States of Arkansas, Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, Tennessee, Texas, and Virginia, as *amici curiae. Messrs. Hubert Meredith,* Attorney General, and *M. B. Holifield,* Assistant Attorney General, filed a brief on behalf of the State of Kentucky, as *amicus curiae,* urging affirmance.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Appellant, Arthur W. Mitchell, filed a complaint with the Interstate Commerce Commission alleging an unjust discrimination in the furnishing of accommodations to colored passengers on the line of the Chicago, Rock Island & Pacific Railway Company from Chicago to Hot Springs, Arkansas, in violation of the Interstate Commerce Act. The Commission dismissed the complaint (229 I. C. C. 703) and appellant brought this suit to set aside the Commission's order. Upon a hearing before three judges, the District Court found the facts as stated in the Commission's findings, and held that the latter were supported by substantial evidence and that

the Commission's order was supported by its findings. The court then ruled that it was without jurisdiction, and its dismissal of the complaint was stated to be upon that ground. The case comes here on direct appeal. 28 U. S. C. 47a.

The following facts were found by the Commission: Appellant, a Negro resident of Chicago, and a member of the House of Representatives of the United States, left Chicago for Hot Springs on the evening of April 20, 1937, over the lines of the Illinois Central Railroad Company to Memphis, Tennessee, and the Rock Island beyond, traveling on a round-trip ticket he had purchased at three cents per mile. He had requested a bedroom on the Chicago-Hot Springs Pullman sleeping car but none being available he was provided with a compartment as far as Memphis in the sleeper destined to New Orleans. Just before the train reached Memphis, on the morning after leaving Chicago, he had a Pullman porter transfer him to the Chicago-Hot Springs sleeper on the same train. Space was there available and the porter assigned him a particular seat in that car for which he was to pay the established fare of ninety cents. Shortly after leaving Memphis and crossing the Mississippi River into Arkansas, the train conductor took up the Memphis-Hot Springs portion of his ticket but refused to accept payment for the Pullman seat from Memphis and, in accordance with custom, compelled him over his protest and finally under threat of arrest to move into the car provided for colored passengers. This was in purported compliance with an Arkansas statute requiring segregation of colored from white persons by the use of cars or partitioned sections providing "equal, but separate and sufficient accommodations" for both races. Later the conductor returned the portion of the ticket he had taken up and advised appellant that he could get a refund on the basis of the coach fare of

two cents per mile from Memphis. That refund was not claimed from defendants and was not sought before the Commission, but it was found that the carriers stood ready to make it upon application. Appellant has an action at law pending against defendants in Cook County, Illinois, for damages incident to his transfer.

The Commission further found that the Pullman car contained ten sections of berths and two compartment drawing rooms; that the use of one of the drawing rooms would have amounted to segregation under the state law and ordinarily such combinations are available to colored passengers upon demand, the ninety cent fare being applicable. Occasionally they are used by colored passengers but in this instance both drawing rooms were already occupied by white passengers. The Pullman car was of modern design and had all the usual facilities and conveniences found in standard sleeping cars. It was air-conditioned, had hot and cold running water and separate flushable toilets for men and women. It was in excellent condition throughout. First-class white passengers had, in addition to the Pullman sleeper, the exclusive use of the train's only dining-car and only observation-parlor car, the latter having somewhat the same accommodations for day use as the Pullman car.

The coach for colored passengers, though of standard size and steel construction, was "an old combination affair," not air-conditioned, divided by partitions into three main parts, one for colored smokers, one for white smokers and one in the center for colored men and women, known as the women's section, in which appellant sat. There was a toilet in each section but only the one in the women's section was equipped for flushing and it was for the exclusive use of colored women. The car was without wash basins, soap, towels or running water, except in the women's section. The Commission stated that, according to appellant, the car was "filthy

and foul smelling," but that the testimony of defendants' witnesses was to the contrary.

The Commission found that in July, 1937, about three months after complainant's journey above mentioned, the old combination coach was replaced by a modern, all-steel, air-conditioned coach, which was divided by a partition into two sections, one for colored and the other for white passengers, and had comfortable seats. In each section there are wash basins, running hot and cold water, "and separate flush toilets for men and women." This coach, the Commission said, was "as fully desirable in all its appointments as the coach used entirely by white passengers traveling at second-class fares."

The Commission also found that the demand of colored passengers for Pullman accommodations over the route in question was shown to have been negligible for many years; that "only about one negro to twenty white passengers rides this train from and to points on the line between Memphis and Hot Springs," and there is hardly ever a demand from a colored passenger for Pullman accommodations. The conductor estimated that this demand did not amount to one per year. What demand there may have been at ticket offices did not appear.

The Commission's conclusion was thus stated: "The present coach properly takes care of colored second-class passengers, and the drawing rooms and compartments in the sleeper provide proper Pullman accommodations for colored first-class passengers, but there are no dining-car nor observation-parlor car accommodations for the latter, and they cannot lawfully range through the train."

The Commission, though treating the enforcement of the state law as a matter for state authorities, thought that in deciding the case on the facts presented it must recognize that the state law required the defendants

to segregate colored passengers; that in these circumstances the present colored-passenger coach and the Pullman drawing rooms met the requirements of the Act; and that as there was comparatively little colored traffic and no indication that there was likely to be such, demand for dining-car and observation-parlor car accommodations by colored passengers as to warrant the running of any extra cars or the construction of partitions, the discrimination and prejudice was "plainly not unjust or undue." The Commission observed that it was only differences in treatment of the latter character that were "unlawful and within the power of this Commission to condemn, remove and prevent."

From the dismissal of the complaint, five Commissioners dissented.

The United States as a party to this suit to set aside the Commission's order, and one of the appellees, does not support the judgment of the court below and has filed a memorandum stating its reasons. The Government concludes that the Commission erroneously supposed that the Arkansas Separate Coach Law applied to an interstate passenger and erroneously determined that the small number of colored passengers asking for first-class accommodations justified an occasional discrimination against them because of their race.

The other appellees—the Interstate Commerce Commission and the carriers—appear in support of the judgment.

*First.* The Commission challenges the standing of appellant to bring this suit. We find the objection untenable. This question does not touch the merits of the suit, but merely the authority of the District Court to entertain it. The fact that the Commission's order was one of dismissal of appellant's complaint did not foreclose the right of review. Appellant was an aggrieved party and the negative form of the order is not control-

ling. *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125, 143.

Nor is it determinative that it does not appear that appellant intends to make a similar railroad journey. He is an American citizen free to travel, and he is entitled to go by this particular route whenever he chooses to take it and in that event to have facilities for his journey without any discrimination against him which the Interstate Commerce Act forbids. He presents the question whether the Act does forbid the conduct of which he complains.

The question of appellant's right to seek review of the Commission's order thus involves the primary question of administrative authority, that is, whether appellant took an appropriate course in seeking a ruling of the Commission. The established function of the Commission gives the answer. The determination whether a discrimination by an interstate carrier is unjust and unlawful necessitates an inquiry into particular facts and the practice of the carrier in a particular relation, and this underlying inquiry is precisely that which the Commission is authorized to make. As to the duty to seek a determination by the Commission in such a case, we do not see that a passenger would be in any better situation than a shipper. *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426; *Robinson* v. *Baltimore & Ohio R. Co.,* 222 U. S. 506; *Mitchell Coal Co.* v. *Pennsylvania R. Co.,* 230 U. S. 247; *Morrisdale Coal Co.* v. *Pennsylvania R. Co.,* 230 U. S. 304; *General American Tank Car Corp.* v. *El Dorado Terminal Co.,* 308 U. S. 422.

The District Court had jurisdiction to review the action of the Commission and the question on that review was whether that action was in accordance with the applicable law.

*Second.* The case was submitted to the District Court upon the evidence taken before the Commission. The

undisputed facts showed conclusively that, having paid a first-class fare for the entire journey from Chicago to Hot Springs, and having offered to pay the proper charge for a seat which was available in the Pullman car for the trip from Memphis to Hot Springs, he was compelled, in accordance with custom, to leave that car and to ride in a second-class car and was thus denied the standard conveniences and privileges afforded to first-class passengers. This was manifestly a discrimination against him in the course of his interstate journey and admittedly that discrimination was based solely upon the fact that he was a Negro. The question whether this was a discrimination forbidden by the Interstate Commerce Act is not a question of segregation [1] but one of equality of treatment. The denial to appellant of equality of accommodations because of his race would be an invasion of a fundamental individual right which is guaranteed against state action by the Fourteenth Amendment (*McCabe* v. *Atchison, T. & S. F. Ry. Co.*, 235 U. S. 151, 160–162; *Missouri ex rel. Gaines* v. *Canada*, 305 U. S. 337, 344, 345) and in view of the nature of the right and of our constitutional policy it cannot be maintained that the discrimination as it was alleged was not essentially unjust. In that aspect it could not be deemed to lie outside the purview of the sweeping prohibitions of the Interstate Commerce Act.

We have repeatedly said that it is apparent from the legislative history of the Act that not only was the evil of discrimination the principal thing aimed at, but that there is no basis for the contention that Congress intended to exempt any discriminatory action or practice of interstate carriers affecting interstate commerce which it had authority to reach. *The Shreveport Case*, 234

---

[1] In this view, we have no occasion to consider the questions discussed by the Attorneys General of several States in their briefs as *amici curiae*.

U. S. 342, 356; *Louisville & Nashville R. Co.* v. *United States,* 282 U. S. 740, 749, 750; *Merchants Warehouse Co.* v. *United States,* 283 U. S. 501, 512, 513. Paragraph 1 of § 3 of the Act says explicitly that it shall be unlawful for any common carrier subject to the Act "to subject any particular person . . . to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." 49 U. S. C. 3. From the inception of its administration the Interstate Commerce Commission has recognized the applicability of this provision to discrimination against colored passengers because of their race and the duty of carriers to provide equality of treatment with respect to transportation facilities; that is, that colored persons who buy first-class tickets must be furnished with accommodations equal in comforts and conveniences to those afforded to first-class white passengers. See Councill v. Western & Atlantic R. Co., 1 I. C. C. 339; Heard v. Georgia R. Co., 1 I. C. C. 428; Heard v. Georgia R. Co., 3 I. C. C. 111; Edwards v. Nashville, C. & St. L. Ry. Co., 12 I. C. C. 247; Cozart v. Southern Ry. Co., 16 I. C. C. 226; Gaines v. Seaboard Air Line Ry. Co., 16 I. C. C. 471; Crosby v. St. Louis-San Francisco Ry. Co., 112 I. C. C. 239.[2]

*Third.* We find no sound reason for the failure to apply this principle by holding the discrimination from which the appellant suffered to be unlawful and by forbidding it in the future.

---

[2] In Edwards v. Nashville, C. & St. L. Ry. Co., 12 I. C. C. 247, 249, the principle was thus stated: "If a railroad provides certain facilities and accommodations for first-class passengers of the white race, it is commanded by the law that like accommodations shall be provided for colored passengers of the same class. The principle that must govern is that carriers must serve equally well all passengers, whether white or colored, paying the same fare. Failure to do this is discrimination and subjects the passenger to 'undue and unreasonable prejudice and disadvantage.' "

That there was but a single instance was not a justification of the treatment of the appellant. Moreover, the Commission thought it plain that "the incident was mentioned as representative of an alleged practice that was expected to continue." And the Commission found that the ejection of appellant from the Pullman car and the requirement that he should continue his journey in a second-class car was "in accordance with custom," that is, as we understand it, according to the custom which obtained in similar circumstances.

Nor does the change in the carrier's practice avail. That did not alter the discrimination to which appellant had been subjected, and as to the future the change was not adequate. It appears that since July, 1937, the carrier has put in service a coach for colored passengers which is of equal quality with that used by second-class white passengers. But, as the Government well observes, the question does not end with travel on second-class tickets. It does not appear that colored passengers who have bought first-class tickets for transportation by the carrier are given accommodations which are substantially equal to those afforded to white passengers. The Government puts the matter succinctly: "When a drawing room is available, the carrier practice of allowing colored passengers to use one at Pullman seat rates avoids inequality as between the accommodations specifically assigned to the passenger. But when none is available, as on the trip which occasioned this litigation, the discrimination and inequality of accommodation become self-evident. It is no answer to say that the colored passengers, if sufficiently diligent and forehanded, can make their reservations so far in advance as to be assured of first class accommodations. So long as white passengers can secure first-class reservations on the day of travel and the colored passengers cannot, the latter are subjected to inequality and discrimination because

of their race." And the Commission has recognized that inequality persists with respect to certain other facilities such as dining-car and observation-parlor car accommodations.

We take it that the chief reason for the Commission's action was the "comparatively little colored traffic." But the comparative volume of traffic cannot justify the denial of a fundamental right of equality of treatment, a right specifically safeguarded by the provisions of the Interstate Commerce Act. We thought a similar argument with respect to volume of traffic to be untenable in the application of the Fourteenth Amendment. We said that it made the constitutional right depend upon the number of persons who may be discriminated against, whereas the essence of that right is that it is a personal one. *McCabe* v. *Atchison, T. & S. F. Ry. Co.*, *supra*. While the supply of particular facilities may be conditioned upon there being a reasonable demand therefor, if facilities are provided, substantial equality of treatment of persons traveling under like conditions cannot be refused. It is the individual, we said, who is entitled to the equal protection of the laws,—not merely a group of individuals, or a body of persons according to their numbers. *Id.* See, also, *Missouri ex rel. Gaines* v. *Canada*, pp. 350, 351. And the Interstate Commerce Act expressly extends its prohibitions to the subjecting of "any particular person" to unreasonable discriminations.

On the facts here presented, there is no room, as the Government properly says, for administrative or expert judgment with respect to practical difficulties. It is enough that the discrimination shown was palpably unjust and forbidden by the Act.

The decree of the District Court is reversed and the cause is remanded with directions to set aside the order of the Commission and to remand the case to the Commission for further proceedings in conformity with this opinion. *Reversed.*