CORBIN et al., v. COUNTY SCHOOL BOARD OF PULASKI COUNTY, VIRGINIA, et al.

No. 5921.

United States Court of Appeals Fourth Circuit.

Argued Oct. 18, 1949.

Decided Nov. 14, 1949.

Oliver W. Hill and Spotswood W. Robinson, III, Richmond, Va. (Martin A. Martin and Hill, Martin & Robinson, Richmond, Va., on the brief), for appellants.

Alton I. Crowell, Pulaski, Va. (John W. B. Deeds and Crowell & Deeds, Pulaski, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiffs-appellants instituted, in the District Court of the United States for the Western District of Virginia, a civil action seeking a declaratory judgment and injunctive relief, alleging that defendants were pursuing a policy, practice and usage of denying to Negro children of Pulaski County, Virginia, on account of their race and color, educational opportunities, facilities and advantages substantially equal to those afforded white children similarly situated. This denial was asserted to be in contravention of the Fourteenth Amendment to the Constitution of the United States and the Constitution and laws of the State of Virginia.

Section 1 of the Fourteenth Amendment reads: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to an person within its jurisdiction the equal protection of the laws."

Pertinent sections of the Constitution and laws of the State of Virginia are:

"The general assembly shall establish and maintain an efficient system of public free schools throughout the State." Constitution of Virginia, Section 129.

"Mixed schools prohibited.—White and colored children shall not be taught in the same school." Constitution of Virginia, Section 140.

"White and colored persons.—White and colored persons shall not be taught in the same school, but shall be taught in separate schools, under the same general regulations as to management, usefulness and efficiency." Code of Virginia, Section 680

The defendant School Board and the defendant Critzer are, under the Constitution and laws of Virginia, legally charged with the duties of establishing and maintaining an efficient system of public free schools in Pulaski County, Virginia. The plaintiffs, all Negroes, are children of school age, or their parents, guardians or next friends, all residing in Pulaski County.

After the District Court had overruled the motion of defendants to dismiss the complaint, the defendants filed an answer denying the practice of racial discrimination. The court below heard extensive evidence, briefs were duly filed and the court entered final judgment dismissing the complaint. From this judgment plaintiffs have appealed to us. The opinion below, with findings of fact and conclusions of law, is reported in 84 F.Supp. 253.

Under Section 140 of the Virginia Constitution and Section 680 of the Code of Virginia (set out above), the segregation of the white and colored races is required in the public schools. While plaintiffs do not concede the validity of such segregation, they do not seem here to contest its validity, provided substantially equal educational facilities are afforded to members of both races. In any event, we think this question would be foreclosed against plaintiffs by decisions of the United States Supreme Court and no useful purpose could be served by our adding to the able discussion of this problem in the opinion below, 84 F.Supp. at pages 254–255.

It seems equally clear that such segregation would be invalid here if these plaintiffs, and others of their · race and color similarly situated, are discriminated against,

and substantially equal educational facilities are denied to them by virtue of their race and color. As the District Judge stated, 84 F.Supp. at page 255: "Consequently, the question for determination here is the factual one of whether or not the policies, usages and customs of the defendants actually do discriminate against these plaintiffs and others similarly situated on account of their race or color." The District Judge answered this question in the negative.

■ We take up first the charge in the complaint of plaintiffs "that defendants discriminate against them on account of their race, in failing to enforce the Compulsory School Attendance Law of the State of Virginia as to Negro children as this law is enforced as to white children." On this question the District Judge stated: "There is evidence that there are a few Negro children of school age in Pulaski County who are not required to attend school because no school facilities are afforded them. On the other hand, it appears that there are at least ten white children of school age who are not required to attend school because no school facilities are afforded them. As to both these Negro children and the white children, they are isolated instances, and I find no evidence of any custom or practice of discrimination in the enforcement of the Virginia Compulsory School Attendance Law." A careful study of the record convinces us that we cannot set aside this finding as being clearly erroneous.

■ The appellants also contend that there has been discrimination with respect to the elementary schools of which four are maintained in Pulaski County for Negro students. This question, although important, was not treated exhaustively in the briefs or argument of counsel. The District Judge in his opinion merely referred to the fact that Calfee Training School, which provides elementary instruction for Negro children in the Town of Pulaski, is the newest school building in the county and compares favorably in its facilities to any elementary school therein; but he made no specific findings as to the other three elementary schools for Negroes.

Under these circumstances, we think that on the remand of the case specific findings should be made as to each of the colored elementary schools, and the court should determine as to each of them whether or not discrimination exists, bearing in mind that the question cannot be decided by averaging the facilities provided for the two classes of pupils throughout the county and comparing one with the other, since the rights created by the Fourteenth Amendment are individual and personal and the prohibitions of the Amendment are observed only when the same or equivalent treatment is accorded to persons of different races similarly situated. Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201; Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R. 2d 441.

■ Nor can we find any reason for disturbing the lower court's holding that there is no discrimination against Negro children in the matter of transportation to and from elementary public schools. The buses for Negro children, in number, condition and equipment are fairly comparable to the buses which transport the white children. While many of the buses are rather heavily loaded, there appears to be no more overcrowding in the buses for Negro children than there is in the buses carrying white children.

Not so happy is the situation as to the Pulaski County high schools. Prior to 1939, there were no public high school facilities for the Negroes of Pulaski County. Then Pulaski County began sending its Negro high school students to the Christiansburg Industrial Institute, at Cambria, in the neighboring County of Montgomery, which had been established as a high school for Negroes by the Friends Freedmen's Association of Philadelphia. Tuition for these Negro pupils was paid by the Pulaski County School Board to the Montgomery School Board. In 1947, the Friends Freedmen's Association conveyed the Christiansburg Industrial Institute "as a going accredited high school for day and boarding students for the education of the colored race" to the School Boards of Pulaski County, Montgomery County and the City

of Radford. The Institute was to be operated under the laws of Virginia and the regulations of the Virginia State Board of Education. See Virginia Code, Sec. 670.

The Institute has been so operated for Negro high school pupils from the two counties and the City of Radford. Upon the payment of tuition, Negro pupils from elsewhere are permitted to attend the Institute. Management of the Institute is entrusted to a committee of nine members, two members from each of the Counties of Pulaski and Montgomery and the City of Radford and the three division superintendents of these two counties and the City of Radford.

Three public high schools for white children are maintained by Pulaski County at Pulaski, Dublin and Draper. For the school year 1947-1948, there were 606 pupils and 25 teachers at Pulaski, 241 pupils and 11 teachers at Dublin, and 187 pupils and 9 teachers at Draper. At the Christiansburg Institute, there were, for the same school year, 233 pupils and 15 teachers. At each of these three high schools for white children, elementary classes are also taught but no elementary instruction is given at the Christiansburg Institute.

At the four high schools for the school year 1947-1948 the instructional costs per pupil were thus figured out: at Christiansburg Institute $118.35, at Draper $102, at Pulaski $98.39 and at Dublin $95. At Pulaski the curriculum offers 41 Carnegie Units. Christiansburg Institute offers 38, Dublin 30 and Draper 24. With the exception of the instructors in barbering and beauty culture, who hold vocational certificates, all the teachers at the Christiansburg Institute have a college degree and hold full collegiate professional certificates. Of teachers holding certificates of lesser degree than college professional, there are one at Pulaski, three each at Dublin and Draper. Both the Pulaski High School and the Christiansburg Institute are fully accredited by the State of Virginia and by the Southern Association. While the high schools at Dublin and Draper are accredited by the State of Virginia, neither is accredited by the Southern Association.

White pupils in Pulaski County may attend one of the three high schools in the county, situated at Pulaski, Draper and Dublin. Negro pupils in Pulaski County, wherever they may live, can attend only the Christiansburg Institute in Montgomery County. These Negro children are transported in two buses, each of which, with many stops, travels around 60 miles per day. Negro children must thus leave home earlier in the morning, endure a longer ride and arrive home later than the white children. No shelters are provided for Negro children who must assemble at points from which they board the bus. In inclement weather, this is a real hardship and inconvenience. The effects of this situation, in many specific instances, upon Negro pupils and their parents, whose social and economic activities must be arranged accordingly, are amply brought out in the evidence. Owing to the longer ride, as compared with white high school students, Negro children must forego many healthful activities at school and have less time for study, recreation and play. The toll thus imposed on Negro students and their parents is both real and severe.

We think the record fairly discloses numerous instances of discrimination in varied educational facilities in favor of white high school students of Pulaski and against the Negro high school students. As we have already pointed out, in Carnegie Units, in professional certificates held by teachers and as to accrediting, there is no racial discrimination. Now we discuss briefly certain educational phases in which racial discrimination seems to be apparent.

In breadth of curriculum, there are more than ten courses open to white high school students and denied to Negroes, while the only courses available to Negroes and not given to whites are beauty culture and barbering. In each of the three high schools for whites is an industrial art shop. At the Christiansburg Institute there is no industrial art shop. Manifest inequalities, at the expense of Negro students, appear in the science laboratories and in the facilities for instruction in the subject of home economics. This seems also true of in-

struction in typewriting and shorthand. Thus there was evidence that the equipment used in these courses at Pulaski High School was worth $5,000 while the value of this equipment at the Christiansburg Institute did not exceed $400.

The Pulaski High School has a modern gymnasium built in 1939, and the Draper High School has a combination gymnasium-auditorium constructed in 1938. Both these schools have basket ball courts. Christiansburg Institute has no gymnasium and no indoor basket ball court. There is rather striking contrast in the facilities for physical education between the Christiansburg Institute and the high schools for whites. At the Pulaski High School and at the Dublin High School is a modern auditorium, at Draper a combination auditorium-gymnasium. The Christiansburg Institute has no auditorium, only a small and inadequate assembly room.

At the Pulaski High School summer courses of eight weeks duration are given for white students. No summer high school courses are available to Negro students either at Christiansburg Institute or at any place in Pulaski County. Extra-curricular activities seem to play an increasingly important part in modern public high schools. The evidence here shows that the white high schools of Pulaski County have many and varied opportunities to engage in these activities which are denied to Negroes. And a very significant inequality is quite apparent in the libraries to which the white and Negro students have access.

■ As Chief Justice Hughes said in Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 349, 59 S.Ct. 232, 236, 83 L.Ed. 208: "The admissibility of laws separating the races in the enjoyment of privileges afforded by the State rests wholly upon the equality of the privileges which the laws give to the separated groups within the State." Absolute equality here is impractical and somewhat Utopian, yet substantial equality is required by the mandate of the Fourteenth Amendment to the United States Constitution. When the picture before us is viewed as a whole, and we must so view it, we are led to the conclusion that the record in the case before us dis-closes rather glaring inequality when the facilities for public high school instruction in Pulaski afforded to white students are compared to those furnished to Negroes. And it can hardly be denied that this discrimination is due to race and color.

■ Where, as here, a right guaranteed by the Fourteenth Amendment has been breached, we cannot concern ourselves with questions of either mere expediency or the difficulties which school authorities may have in securing that constitutional right. Whenever the forbidden racial discrimination rears its head, a solemn duty to strike it down is clearly imposed upon the courts.

For the reasons stated, as to instruction in the elementary schools of Pulaski County, the judgment of the District Court is vacated and the case is remanded to the District Court for specific findings as is indicated in this opinion. As to high school instruction for the Negro pupils of Pulaski County, the judgment of the District Court is reversed and the case is remanded to the District Court with instructions to grant the relief sought by the plaintiffs.

Reversed in part, vacated in part and remanded with directions.