## GREENE v. ATLANTIC COAST LINE R. CO.

Civ. 9245.

United States District Court
E. D. New York.

Jan. 17, 1951.

---

William T. Andrews, New York City, for plaintiff (Howard E. Bell, New York City, of counsel).

Stewart & Shearer, New York City, for defendant (James J. Mennis, New York City, of counsel).

KENNEDY, District Judge.

On July 14, 1947, the plaintiff purchased two tickets to Charleston and return, intending to take a trip with his wife and two children (aged respectively at that time two and three and one-half). He intended to travel in a chair car, equipped with reclining chairs, an accommodation which the traveling public may secure by a mere reservation without extra charge. Plaintiff had such reservations both going and returning.

The trip south to Charleston was without incident in that plaintiff was given space in the chair car for which his reservations called. On the return trip (August 23, 1947) he had reserved space in a car referred to in the record as CH8, in the rear section of the train. Being colored, he was, however, directed to the forward section of the train, which is the practice followed with respect to passengers boarding trains at Charleston.

The laws of South Carolina, North Carolina and Virginia, it is said, provide for the segregation of passengers according to color. Under the direction of the porter the plaintiff and his family arrived at a car referred to in the record as CH1, a combination of baggage and chair car. This type has a number of reclining chairs, a lounge section, and some rigid chairs. It was two of these latter chairs which were furnished to plaintiff in lieu of the

reservations already made in the car toward the rear. Plaintiff's original seats were taken by passengers who boarded the train at Charleston without reservations.

The suit is at law; the claim is for damages in the amount of $5,000. 49 U.S.C.A. § 3, par. (1). While the complaint is framed on a violation of the plaintiff's civil rights, 8 U.S.C.A. § 43; 28 U.S.C.A. § 1343, no state action of any kind is involved or claimed to be involved. Apparently for this reason, at the opening of the trial the plaintiff submitted a brief urging that the practice of the railroad in segregating passengers was a violation of 49 U.S.C.A. § 3 par. (1). Because of the course which the proof had now taken, I questioned counsel for the defendant and requested him to furnish me with a copy of the carrier's segregation rule. That was done and the paper marked in evidence.

Plaintiff's counsel was in agreement with me that there was no possible claim under the civil rights statute, 8 U.S.C.A. § 43, because the discrimination complained of was not produced by state action. He stated, however, that it was within the jurisdiction of a single district judge not only to make a finding that a regulation of a railroad operating under the Interstate Commerce Commission was unreasonable, but also to award money damages on that basis.

Assuming (without deciding) that the accommodations offered in the head car were not the equivalent of those which plaintiff would have had in one of the rear cars, what is involved here is not the validity of the state segregation statutes but "equality of accommodations". Mitchell v. U.S., 1941, 313 U.S. 80, 94, 61 S.Ct. 873, 877, 85 L.Ed. 1201. In the Mitchell case, just cited, the initial attack upon the railroad's regulation concerning Pullman accommodations was made before the Interstate Commerce Commission. The order made by that body was then reviewed by a three-judge court, 28 U.S.C.A. §§ 1336, 1398, 2284, 2321, 2325, and further reviewed on direct appeal to the Supreme Court. Re-

cently a very similar question was dealt with, Henderson v. U. S. et al., 1950, 339 U. S. 816, 70 S.Ct. 843 and a dining car regulation which the Interstate Commerce Commission refused to set aside was struck down by the Supreme Court, or at least was remanded to the Interstate Commerce Commission for adverse action.

I thought at the trial that the Interstate Commerce Commission had exclusive ("primary") jurisdiction in the first instance to pass upon the factual reasonableness of such regulations as these, Mitchell Coal Co. v. Pennsylvania Railroad Co., 1913, 230 U. S. 247, 33 S.Ct. 916, 57 L.Ed. 1472 and cases cited and discussed. I therefore, called upon counsel for a brief only on this point, reserved decision upon other matters involved, and in the course of the colloquy explained to plaintiff's counsel that if any statute of limitations or other defense of that nature might become involved, I would try to avoid dismissing the action even if my decision on jurisdiction was adverse.

While reading the Mitchell case, supra, I noticed that Mitchell had pending in the State Supreme Court an action which must have been in the nature of trespass, because he had been forcibly ejected from a Pullman car after paying for a seat and had been threatened with arrest unless he went quietly. Jurisdiction-wise, the present suit could perhaps be maintained on the basis of diversity, independently of any federal statute, if there were any showing of assault or other trespass of that sort. However, the plaintiff himself said that he was treated with courtesy and, except for passing mention of annoyance by a drunken passenger, he made no claim either in his complaint or in the proof which would form any real basis for a claim at common law.

I think that the Interstate Commerce Commission has primary jurisdiction over questions of equality of accommodation, bu I shall withhold the entry of an order of dismissal for a reasonable time within which plaintiff may, if so advised, pursue his remedy before the Commission.