## SOLOMON v. PENNSYLVANIA R. CO. et al.

United States District Court
S. D. New York.

April 5, 1951.

See also 79 F.Supp. 449.

Conrad J. Lynn, New York City, for plaintiff.

Stewart & Shearer, New York City, (James J. Mennis, New York City, of counsel), for defendants.

McGOHEY, District Judge.

Wilhelmina Solomon sues the Pennsylvania R. R. and Atlantic Coast Line R. R. for damages sustained by being forced to give up her reserved seat and other accommodations in one car and to accept a seat and inferior accommodations in another car reserved for Negroes.

The evidence, which was largely uncontested, clearly established the following facts which are accordingly found.

On March 26, 1948, plaintiff, a Negro lady, purchased from defendant Pennsylvania a coach ticket for transportation from New York City to Lakeland, Florida, and return. The ticket entitled her, at no extra charge, to seat #9 in car CW43 on the "Champion", which departed Pennsylvania Station at 3:05 P.M. March 27, 1948. At Richmond, Va. the train was taken over and thereafter operated by defendant Atlantic Coast Line. Pennsylvania was merely the agent for Atlantic Coast Line in the sale of the ticket for that part of the journey which was made over the latter's tracks. None of the acts complained of was done by Pennsylvania's employees.

Plaintiff occupied her reserved seat without disturbance until the train reached Savannah, Georgia, at about 8:00 A.M. on March 28. At that time a conductor employed by the Atlantic Coast Line, after asking plaintiff her destination and inspecting her ticket directed her to move five cars forward to a car restricted to Negroes. There were several other passengers in car CW43 at the time. The plaintiff objected but the conductor, though polite, was firm. He told her that she must move. A porter, who accompanied the conductor, asked her to identify her baggage, which she did. He picked it up and started away. Thereupon she left her reserved seat and, escorted by the porter, who carried her bags, was directed to a seat in the restricted car designated CW36. The incident, occurring in the presence of the other passengers, exposed plaintiff, a lady of refinement, to public humiliation and caused her to become upset.

Both coaches, built in 1946 by the same manufacturer, were air-conditioned and had reclining seats. However, there were substantial differences in other respects. CW43 is an all-passenger coach for 54 persons. It has commodious accommodations in the ladies' retiring room, including a large sofa. CW36 is a combination car. It is divided into three sections. One is for baggage and mail storage; another in the center of the car contains sleeping and toilet accommodations for some of the train crew. A two-foot passage along one side of this section opens on to the third section which is for passengers. This is 20′ 7¾″ long and 9′ 3¼″ wide, with an aisle through the center. A part of this section, 6′ 1½″ long, is called a lounge. One side of it contains a table running out from the side of the car, with rigid seats for two people on each side of the table. Across the aisle is another smaller table in front of a settee along the side of the car. Glass partitions on each side of the aisle partially separate the lounge from the remainder of the section which has fourteen reclining seats similar to those in car CW43. The ladies' retiring room in car CW36 is smaller and has no sofa. The accommodations which the plaintiff was forced to accept clearly were substantially inferior to those which she was compelled to leave.

The proof failed to establish any cause of action against Pennsylvania and

so the complaint as to it must be dismissed.[1]

The defense of Atlantic Coast Line is that plaintiff was removed pursuant to the railroad's rules and regulations, among which was the following, in effect south of Richmond, Va.: "White and colored passengers must be seated in separate cars. No member of one race shall be permitted to occupy space in a car designated for occupancy by members of the other race." Atlantic Coast Line claims the right to adopt reasonable rules and regulations providing for the segregation of white and Negro interstate passengers[2] and urges that the question whether they are reasonable must first be determined by the Interstate Commerce Commission. Thus it argues that this court lacks jurisdiction to try this action.

The plaintiff has not brought the question before the Commission. Accordingly, if there were no more here than the mere question of the rule's reasonableness under the Interstate Commerce Act,[3] there might be some merit to the defendant's position in view of the following statement in Mitchell v. United States:[4] "The determination whether a discrimination by an interstate carrier is unjust and unlawful necessitates an inquiry into particular facts and the practice of the carrier in a particular relation, and this underlying inquiry is precisely that which the Commission is authorized to make. As to the duty to seek a determination by the Commission in such a case, we do not see that a passenger would be in any better situation than a shipper."

Mitchell, a Negro, had filed a complaint with the Commission charging that the railroad's regulation was an unreasonable discrimination against Negroes in violation of the Interstate Commerce Act. He asked that the Commission order the railroad to cease and desist from such violations and to provide reasonable facilities for Negroes in the future. The Commission having dismissed the complaint, Mitchell sued in the District Court to set aside the Commission's order. He was challenged as having no standing to sue and the District Court dismissed the complaint on the ground that it lacked jurisdiction. It was in the course of holding that the District Court did have jurisdiction in a suit by Mitchell to review the Commission's action, that the Supreme Court made the foregoing statement.

The question there before the Court, however, was whether Mitchell had standing to sue in the District Court for review of the Commission's order entered on his complaint. The Supreme Court was not called upon to decide and accordingly did not pass upon the District Court's jurisdiction in a suit for damages sustained through enforcement of the railroad's regulation.[5] The decision certainly does not hold that a person claiming such damages cannot in the first instance seek them in the District Court. It is clear, moreover, that the Court was dealing solely with the question of the reasonableness of the discrimination under the Interstate Commerce Act. In fact, it relied on the cases involving shippers' complaints against practices and rates alleged to be unreasonable under the Act.[6]

■ The complaint before me, however, presents a different question. As in

---

1. See L. & N. R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711.

2. Citing Chiles v. Chesapeake & Ohio Railway, 218 U.S. 71, 76, 30 S.Ct. 667, 54 L.Ed. 936; and Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547.

3. 49 U.S.C.A. § 1 et seq.

4. 313 U.S. 80, 93, 61 S.Ct. 873, 876, 85 L.Ed. 1201.

5. It should, perhaps, be noted that at the time of the Supreme Court's decision dealing with Mitchell's request for a Commission cease and desist order he "has an action at law pending against defendants in Cook County, Illinois, for damages incident to his transfer." 313 U.S. at 90, 61 S.Ct. at 875, 85 L.Ed. 1201.

6. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Robinson v. Baltimore & Ohio R. Co., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288; Mitchell Coal Co. v. Pennsylvania R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472; Morrisdale Coal Co. v. Pennsylvania R. Co., 230 U.S., 304, 33 S.Ct. 938, 57 L.Ed. 1494. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361.

Chance v. Lambeth,[7] which will be discussed later, the question here is whether *the rule and regulation is invalid under the Constitution as an unlawful burden on interstate commerce.*[8] Accordingly, the primary jurisdiction doctrine established in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.[9] does not apply because determination of the constitutional question is not a matter calling "for technical knowledge pertaining to transportation [which] must first be passed upon by the Interstate Commerce Commission before a court can be invoked."[10] Consequently, I hold that this court has jurisdiction of the action.[11]

In the Chance case, plaintiff, a Negro, while traveling on the Atlantic Coast Line as an interstate passenger on June 25, 1948, was requested to move to an "all-colored" coach which was found to be equal in accommodation to the one in which he was riding. He refused to do so and was put off the train pursuant to the company's regulation requiring segregation.[12] The Court of Appeals for the Fourth Circuit held the regulation invalid as an unlawful burden on interstate commerce and permitted recovery.

 The regulation involved here is indistinguishable from the one struck down in Chance's case. Indeed defendants' counsel concedes that "the substance [of the two regulations] is the same." Therefore, under Chance v. Lambeth, supra, the regulation here in question is invalid as an unlawful burden on interstate commerce.

Thus, having acted without any valid authority, Atlantic Coast Line is clearly liable for the threefold wrong done the plaintiff.[13] She was forced, in the presence of other passengers, to remove from her reserved seat and travel through four cars to another. She was thereby subjected to public humiliation which caused her to become upset. And she was made to accept accommodations substantially inferior to those she was forced to abandon.[14]

I find that she is entitled to damages in the sum of $500.

Submit decree.

---

7. 4 Cir., 186 F.2d 879.

8. U.S.Const. Art. I, § 8, Cl. 3.

9. Note 6 supra.

10. Rochester Tel. Corp. v. United States, 307 U.S. 125, 139, 59 S.Ct. 754, 761, 83 L.Ed. 1147.

11. This jurisdictional question was not raised in the Chance case and it is not mentioned in the opinion. From all that appears Chance initiated his action in the District Court, without first seeking relief from the Commission.

12. He was also arrested for disorderly conduct. The decision, however, does not turn on this fact.

13. 8 U.S.C.A. § 43.

14. 49 U.S.C.A. § 3(1); Henderson v. United States, 339 U.S. 816, 824, 70 S.Ct. 843.