(No. 32949.—)
ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, *vs.*
ILLINOIS COMMERCE COMMISSION, Appellee.

*Opinion filed March 17, 1954.*

John W. Foster, of Chicago, (Joseph H. Wright, and Herbert J. Deany, of counsel,) for appellant.

Latham Castle, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellee.

Moore, Ming & Leighton, of Chicago, (Thurgood Marshall, of New York, N. Y., and William R. Ming, Jr., and George N. Leighton, both of Chicago, of counsel,) for Vera Johnson et al., amici curiae.

Mr. Justice Fulton delivered the opinion of the court:

This is an appeal pursuant to section 69 of the Public Utilities Act (Ill. Rev. Stat. 1953, chap. 111⅔, par. 73,) for review of a judgment of the superior court of Cook County, which affirmed the decision and order of the Illinois Commerce Commission whereby the Commerce Commission found that the method used by the Illinois Central Railroad Company, appellant, in loading its interstate train, "The City of New Orleans," constituted segregation and directed it to cease and desist from assigning passengers to specific cars in the State of Illinois in a manner which segregates passengers on the basis of race or color and further prohibited it from using a car-card system in assign-

ing passengers to designated cars in the State of Illinois in a manner which segregates passengers on the basis of race or color.

The proceedings were instituted by complaint filed with the Illinois Commerce Commission against the Illinois Central Railroad by Vera Johnson, a Negress, alleging she was segregated and discriminated against in one of the railroad's trains. Thereafter the complaint was amended to charge that the acts in question violated the Federal constitution, the United Nations charter, and section 38 of the Public Utilities Act. (Ill. Rev. Stat. 1953, chap. 111⅔, par. 38.) At the first hearing the National Association for the Advancement of Colored People, Chicago branch, filed a petition and was granted leave to intervene. After conclusion of complainant's direct evidence, appellant railroad made a motion to dismiss on the ground that the evidence showed the complaint was based on an interstate operation over which the Interstate Commerce Commission had exclusive jurisdiction. This motion was taken with the case.

The testimony of the complaining witness, Vera Johnson, was to the effect that she purchased a ticket for use July 1, 1950, on the Illinois Central train, "The City of New Orleans," between Chicago, Illinois, and Canton, Mississippi. On that date she went to the Twelfth Street station of the Illinois Central in the city of Chicago to board the train and at the time she went through the gate she was handed a card designating car No. 2 as the car to which she should go for boarding the train. She testified that on the way to car 2 she noticed empty coaches and tried to enter one of them but that she was told she could not board these cars as they were for whites; that she proceeded to car 2 and boarded the train at that point; that she was unable to obtain a seat in that car and after the train commenced to move she walked toward the rear of the train through approximately six or seven cars to look for a seat; that she found empty seats in a coach occu-

pied entirely by white people and seated herself; that a colored porter then approached her and told her she could not sit in that car as it was for whites, whereupon he took her luggage and helped her back to car 2. She further testified that she did not obtain a seat on the train until the train arrived at Kankakee, Illinois, approximately thirty minutes after departure time. She further testified that the physical features of all the cars on the train were the same as those in car 2.

Other evidence was introduced by both complainant and the appellant, Illinois Central Railroad. The commission, having considered the evidence, found that it had jurisdiction of the parties and of the subject matter and found the following facts to exist: that the Illinois Central Railroad Company is engaged in the transportation of persons as a common carrier in the State of Illinois and is a public utility as defined in section 10.3 of the Public Utilities Act, (Ill. Rev. Stat. 1953, chap. 111⅔, par. 10.3;) that the Illinois Central operates an all-coach non-reserved train known as "The City of New Orleans" which runs daily in both directions between Chicago, Illinois, and New Orleans, Louisiana, and has its northern terminus at the central station of the Illinois Central in Chicago, Illinois; that each passenger as he passes through the gate at the central station to board "The City of New Orleans" is handed a card designating the car to which such passenger is assigned; that the purpose of this car-card system is to provide for the early loading of cars and the distribution of passengers according to their destination; that the said car-card system is applied in a manner to segregate Negro passengers in cars at the head of the train without respect to their destination and without respect as to whether they are traveling to points within the State of Illinois or beyond the border of the State of Illinois; that the application of such car-card system sometimes requires Negro passengers to stand in overcrowded cars when there are vacant

seats available in other cars which would be available to them if they were white; that the application of said car-card system resulting in the assigning of Negro passengers to cars reserved for Negro passengers toward the head of the train makes it more difficult for Negro passengers, as compared to white passengers, to use certain facilities, such as the observation car and the diner, which are located at or near the rear end of the train.

From the foregoing findings, the Commerce Commission concluded that the application of the car-card system subjected Negro passengers to prejudice and disadvantage and discrimination with respect to service solely because of race and color and was contrary to the provisions of section 38 of the Public Utilities Act (Ill. Rev. Stat. 1953, chap. 111⅔, par. 38,) and the policy of the State of Illinois, as set forth in the Civil Rights Act. (Ill. Rev. Stat. 1953, chap. 38, par. 125 *et seq.*) On the basis of such conclusion a cease and desist order and prohibition heretofore referred to was issued.

Section 38 of the Public Utilities Act (Ill. Rev. Stat. 1953, chap. 111⅔, par. 38,) contains the following provision: "No public utility shall, as to rates or other charges, services, facilities or in other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates or other charges, services, facilities, or in any other respect, either as between localities or as between classes of service."

Section 1 of the Civil Rights Act (Ill. Rev. Stat. 1953, chap. 38, par. 125,) contains the following provision: "All persons within the jurisdiction of said State of Illinois shall be entitled to the full and equal enjoyment of the accommodation, advantages, facilities and privileges of * * * railroads, * * * and public conveyances on land, water, or air, * * * subject only to the conditions

and limitations established by laws and applicable alike to all citizens; * * *."

The argument of appellant Illinois Central Railroad is twofold; first, that the State commission lacked jurisdiction to hear and determine the issue raised by the complainant because the Interstate Commerce Commission has sole jurisdiction to hear and determine the issues; and second, the order of the commission is defective in that its conclusion is not supported by proper findings, and is, in fact, contrary to the evidence.

As to the issue concerning jurisdiction, the appellants assert in support of their contention the proposition that the Congress of the United States has acted to place jurisdiction over the subject matter in the Interstate Commerce Commission; that when the United States has exercised its exclusive powers over interstate commerce so far as to take possession of the field, the States can no more supplement its requirements than they can annul them; that only the silence of Congress authorizes the exercise of the police power of the State over phases of 'interstate commerce; that the intrastate and interstate aspects of appellant's loading practice are so interrelated as to require a single uniform rule; and that interstate carriers may adopt reasonable rules and regulations for the government of their business, free from any interference from the States.

At the outset, it should be observed that this litigation does not involve the validity or invalidity of a State segregation statute as applied to a carrier. Rather, the litigation is directed to the validity or invalidity of a rule, regulation or practice of a carrier as being prejudicial, disadvantageous, or discriminatory.

Since the adoption of the original Interstate Commerce Act on February 4, 1877, the following provision as to preferences has been contained therein: "It shall be unlawful for any common carrier subject to the provisions of this chapter to make or give any undue or unreasonable

preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Title 49, U.S.C.A., Transportation, chap. I, par: 3(1).

It would appear that the decision of this court in *Public Utilities Com.* v. *Baltimore and Ohio Southwestern Railroad Co.* 281 Ill. 405, which decision has been neither overruled, modified, nor distinguished, by analogy concludes the disposition of the question of jurisdiction. In that case, the State Public Utilities Commission found as a fact that a plan adopted by the railroad for distribution of coal cars in time of car shortages was unjust, unreasonable, and in violation of the Illinois law providing for the regulation of public utilities, and as a consequence the commission ordered the railroad to desist from that method and practice and to distribute its coal cars as required by the statute. The railroad involved was an interstate carrier and it challenged the jurisdiction of the State over distribution of coal cars of an interstate carrier, even though such cars were used entirely in intrastate commerce. We concluded that the Hepburn amendment in 1906 to the Interstate Commerce Act, requiring every carrier subject to the act to provide and furnish transportation upon reasonable request therefor, did not deprive a State of control over commerce within the State, although the carrier was also engaged in interstate commerce, since neither Congress nor the Interstate Commerce Commission had ever established any rule or system of car distribution or mine rating. However, we did in such case proceed to the conclusion that the Utilities Commission was lacking in jurisdiction for the reason that, although the State and Federal courts may have concurrent jurisdiction of actions for a carrier to perform a duty specified by both State and Federal

statutes, yet, if an interstate carrier has established a rule or practice under such statute, the authority to determine whether such rule is reasonable or discriminates against one class of shippers in favor of another rests with the Interstate Commerce Commission exclusively and no court has jurisdiction until the commission has determined that question.

The rationale of such conclusion as expressed in that decision and the cases therein relied upon seem to be that where the rule is attacked as unfair or discriminatory the determination of such question necessitates an inquiry into particular facts and the practice of the carrier in a particular relation and calls for exercise of the administrative power and discretion of the Interstate Commerce Commission, and the right to make such inquiry and determine such question lies exclusively with the Interstate Commerce Commission.

The primary and exclusive jurisdiction of the Interstate Commerce Commission over cases dealing solely with the question of the reasonableness of a railroad's discrimination has been established in a long line of cases involving shippers who allege the practices and rates of the railroad to be unreasonable. *Texas & Pacific Railway Co.* v. *Abilene Cotton Oil Co.* 204 U.S. 426, 27 S. Ct. 350, 51 L. ed. 553; *Robinson* v. *Baltimore & Ohio Railway Co.* 222 U.S. 506, 32 S.Ct. 114, 56 L. ed. 288; *Mitchell Coal Co.* v. *Pennsylvania Railway Co.* 230 U.S. 247, 33 S. Ct. 916, 57 L. ed. 1472; *Morris Dale Coal Co.* v. *Pennsylvania Railway Co.* 230 U.S. 304, 33 S. Ct. 938, 57 L. ed. 1494; *General American Tank Car Corp.* v. *El Dorado Terminal Co.* 308 U.S. 422, 60 S. Ct. 325, 84 L. ed. 361.

That a passenger is in the same situation as a shipper and bound by the same rule was established in the case of *Mitchell* v. *United States,* 313 U.S. 80, 61 S. Ct. 873, 85 L. ed. 1201. In that case Mitchell, a Negro, filed a

complaint with the Interstate Commerce Commission charging that a railroad's regulation was an unreasonable discrimination against Negroes and a violation of the Interstate Commerce Act. He asked that the commission order the railroad to cease and desist from such violation and to provide reasonable facilities for Negroes in the future. The commission having dismissed his complaint, Mitchell sued in the district court to set aside the commission's order. He was challenged as having no standing to sue and the district court dismissed the complaint on the ground that it lacked jurisdiction. It was in the course of holding that the district court did have jurisdiction in the suit by Mitchell to review the commission's action that the court said at page 98 of 315 U.S. as follows: "The determination whether a discrimination by an interstate carrier is unjust and unlawful necessitates an inquiry into particular facts and the practice of a carrier in a particular relation and this underlying *inquiry* is precisely that which the Commission is authorized to make. As to the duty to seek a determination by the Commission in such a case, we do not see that a passenger would be in any better situation than a shipper."

In *Henderson* v. *United States,* 339 U.S. 816, 94 L. ed. 1302, the United States Supreme Court held that a Negro, having been subjected to practices of a railroad which the Interstate Commerce Commission and the district court had found to violate the Interstate Commerce Act, had standing to bring proceedings challenging the railroad's current regulations on the ground that they permitted recurrence of comparable violation. In the *Henderson case,* a Negro passenger on an interstate train was denied dining service, although at least one seat at the tables reserved for Negroes was unoccupied, the other seats of these tables being taken by white passengers. After the incident the railroad modified its regulations by providing for the reservation of ten tables exclusively and un-

conditionally for white passengers and of one table in the same room for Negroes and required a partition between that table and the others. The Supreme Court, in unanimously holding that the passenger had a standing to challenge the new regulations in that they violated section 3(1) of the Interstate Commerce Act, noted that from the beginning the Interstate Commerce Commission has recognized the application of that section to discriminations between white and Negro passengers, citing a large number of Interstate Commerce decisions and *Mitchell* v. *United States,* 315 U.S. 80, 85 L. ed. 1201.

From the foregoing, we conclude that the determination of whether or not a rule or practice of an interstate carrier is discriminatory or unduly preferential lies exclusively with the Interstate Commerce Commission, and that the Illinois Commerce Commission has no jurisdiction to determine whether or not such rule or regulation is discriminatory or preferential.

We feel that this result is not only legally correct, but also is the logical and practical manner of protecting the complaining witness's rights with due consideration for the railroad's operational problems. If the State of Illinois could prescribe what rule or practice should or should not be followed by an interstate carrier in loading interstate passengers on interstate trains, then so, too, could the States of Kentucky, Tennessee, Mississippi, and Louisiana through which the Illinois Central operates its train "The City of New Orleans." Under the laws of each of those other States, the Illinois Central is required to provide separate but equal accommodations for the Negro and Caucasian races. The chaotic conditions that would result from divergent loading practices prescribed by various States clearly indicates that the interstate and intrastate characteristics of loading are so interrelated that the paramount Federal power must be exerted to the exclusion of the State powers in order to achieve a single,

uniform rule for the promotion and protection of national travel.

The Illinois Commerce Commission having no jurisdiction to enter the order in question, the judgment of the superior court of Cook County affirming such Illinois Commerce Commission order is reversed.

*Judgment reversed.*