# Ability of the Environmental Protection Agency to Sue Another Government Agency

Before a lawsuit is justiciable under Article III of the Constitution, there must be a genuine controversy appropriate for judicial resolution. There must be a concrete adversity of interest between the opposing parties, because an Article III court may not decide a collusive suit or render an advisory opinion. Accordingly, courts must insist that the real party in interest challenging the Executive Branch's position not itself be an agency of the Executive Branch. In this way, courts will avoid hearing potentially collusive lawsuits and performing functions committed by the Constitution to the President.

There are no cases in which disputes between two agencies, both of whose heads serve at the pleasure of the President, have been found to be justiciable. In two recent Superfund enforcement actions initiated by the Environmental Protection Agency, the defendants attempted to join other federal agencies as co-defendants. In both cases, the courts rebuffed the attempts on the ground that the United States may not sue itself. Accordingly, a suit brought by the EPA against the Department of Energy, or any other Executive Branch agency whose head serves as the pleasure of the President, would be nonjusticiable.

December 4, 1985

LETTER FOR THE CHAIRMAN, SUBCOMMITTEE ON OVERSIGHT AND INVESTIGATIONS OF THE HOUSE COMMITTEE ON ENERGY AND COMMERCE

The Environmental Protection Agency (EPA) has referred the first question in your letter of October 21, 1985 to this Department for response. You request a legal analysis of the question whether a suit by one Executive Branch agency against another presents a "justiciable controversy" that an Article III court may decide. Specifically, you ask for our comments on the conclusion in an August 3, 1983 memorandum from Region IV, EPA, that "failure by [the Department of Energy (DOE)] to comply with applicable RCRA [Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.*] requirements would create a constitutionally 'justiciable controversy' so that EPA could bring suit in federal district court to enforce such requirements."

The Region IV memorandum states that it "could find no case in which a court had declined to hear a case based on an intra-branch dispute because of lack of a 'case or controversy' under the Constitution."[1] It then cites a number

---

[1] The author of the memorandum was apparently not aware of *Defense Supplies Corp v United States Lines Co.*, 148 F.2d 311 (2d Cir.), *cert. denied*, 326 U.S. 746 (1945), in which the court of appeals affirmed dismissal of a cargo libel brought against the United States by a corporation whose stock was wholly owned by the Reconstruction Finance Corporation, on grounds that "this [is] nothing more than an action by the United States against the United States." *Id.* at 312. In this regard, see also *United States v. Easement & Right of Way*, 204 F. Supp. 837 (E.D. Tenn. 1962), in which the district court refused the Tennessee Valley Authority's attempt to join the Farmers Home Administration as a party defendant in a condemnation suit, holding that "any differences between these agencies would at most be inter-agency disputes which are not subject to settlement by adjudication." *Id.* at 839.

of cases to support its conclusion that there is no constitutional barrier to a court's adjudication of an enforcement action brought by EPA against DOE. None of these cases is directly on point, however, because none of them involved a suit initiated by one Executive Branch agency against another. More importantly, as we will show below, none of them provides any support for the conclusion that a court may adjudicate enforcement action under RCRA or the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* (CERCLA), brought by EPA against DOE (or indeed against any other Executive Branch agency whose head serves at the pleasure of the President).

It may be helpful at the outset briefly to review the constitutional concerns underlying the justiciability question in this context. In order to find that a controversy is "justiciable" so as to permit the exercise of Article III jurisdiction, a court must satisfy itself that there is a genuine controversy between the parties to a lawsuit, and that the controversy is appropriate for judicial resolution. There must be a concrete adversity of interest between the opposing parties; an Article III court may not decide a collusive suit or render an advisory opinion. Where government agencies appear on both sides of a suit, a court must therefore assure itself that it is not being asked to decide a question that is properly addressed to the branch of government to which those agencies belong. Where two Executive Branch agencies appear on opposing sides of a lawsuit, and where the issue in litigation involves both agencies' obligation to execute the law, the principle of separation of powers makes these inquiries particularly sensitive. Accordingly, the courts must insist that the "real party in interest" challenging the Executive's position in court not itself be an agency of the Executive. If it is, the court is not only faced with a potentially collusive lawsuit, it is also being asked to perform a function committed by the Constitution to the President.

The cases cited by the Region IV memorandum in support of its conclusion that EPA may sue DOE fall generally into three categories. One category consists of suits brought by or against one of the so-called "independent regulatory agencies." *E.g., Udall* v. *Federal Power Comm'n*, 387 U.S. 428 (1967); *Secretary of Agriculture* v. *United States*, 347 U.S. 645 (1954) (ICC); *United States* v. *ICC*, 337 U.S. 426 (1949); *ICC* v. *Jersey City*, 322 U.S. 503 (1944); *Mitchell* v. *United States*, 313 U.S. 80 (1941) (ICC). The second category consists of two suits in which the Comptroller of the Currency intervened on the side of the defendant in antitrust actions brought by the Justice Department. *United States* v. *Marine Bancorporation*, 418 U.S. 602 (1974); *United States* v. *Connecticut National Bank*, 418 U.S. 656 (1974). In the third category are two suits between the government and an individual officer of the government. *Powell* v. *McCormack*, 395 U.S. 486 (1969); *United States* v. *Nixon*, 418 U.S. 683 (1975).

In every one of these cases, the Supreme Court found, implicitly or explicitly, sufficient adversity of interest between the parties to make the controversy a justiciable one. In none was the Court asked to decide, nor did it decide, a

legal controversy between two agencies both of whose heads serve at the pleasure of the President, as do the heads of EPA and DOE. Even where an independent regulatory agency appears in opposition to an Executive Branch agency represented by the Department of Justice, the Court finds it important to emphasize that the interests at issue in the suit are such as to ensure the constitutionally necessary adversity between the parties. For example, in *United States* v. *ICC*, the Court held the suit justiciable because certain railroads, not the ICC, were the "real parties in interest" opposing the government. 337 U.S. at 432. And in *Secretary of Agriculture* v. *United States*, the Court was at pains to point out that the Secretary of Agriculture was appearing in the litigation in opposition to the Interstate Commerce Commission "on behalf of the affected agricultural interests," pursuant to specific statutory authorization. 347 U.S. at 645.

In the two antitrust suits in which the Comptroller of the Currency participated on the defendant's side against the Justice Department, *Marine Bancorporation* and *Connecticut National Bank*, it does not appear that the two governmental entities involved were true adversaries in the judicial process. There was a real party in interest, namely the bank defendant, in each of the two cases; the Comptroller, having approved a proposed merger under the Bank Merger Act pursuant to statutory authority, intervened on the bank's side to enable the courts to have the benefit of its reasoning.

The two cases in the third category, *Powell* v. *McCormack* and *United States* v. *Nixon*, both involved unique situations in which personal rather than governmental interests were at stake for one of the parties. In *Powell*, an elected officer of the Legislative Branch challenged the House of Representative's refusal to seat him. In the *Nixon* case, the Court appears to have been persuaded that the President's personal interest in the matter precluded his acting to resolve the matter at issue within the branch of government that he headed.[2]

In addition, there have been some recent developments in the case law of which the 1983 Region IV memorandum could not have been aware. The justiciability issue has recently arisen in two EPA Superfund enforcement actions, in which defendants attempted to join government agencies as party defendants. Both courts have refused to do so, reasoning that the United States may not sue itself. *United States* v. *Shell*, 605 F. Supp. 1064, 1081–84 (D. Colo. 1985); *United States* v. *Conservation Chemical Co.*, No. 82–0983 (W.D. Mo. Mar. 13, 1985). In *Shell*, the court refused to join the Department of the Army as a party defendant, on the ground that the plaintiff "United States" was itself the Army. 605 F. Supp. at 1082. In *Conservation Chemical*, the court granted the Special Master's recommendation to dismiss a third-party complaint against several Executive Branch agencies, holding that because the United States was

---

[2] In the *Nixon* case, it would have been against President Nixon's personal, as opposed to official, self-interest to resolve the dispute in favor of the Special Prosecutor. Therefore, there was sufficient reason to suspect that he could not "faithfully" execute the law because of a personal conflict of interest. That is not the case with a dispute between EPA and another executive agency. Although many political considerations may influence his decision (as is the case with every Presidential decision), the President does not have a personal stake in the outcome. Furthermore, with respect to ordinary environmental disputes between EPA and other government agencies, the President labors under no disability whatever He is in a position to act.

already a party to the action, the defendants' claims should have been raised by counterclaim.

The Region IV memorandum argues finally that Executive Order No. 12088 (Oct. 13, 1978), *reprinted in* 42 U.S.C. § 4321 note, contemplates judicial enforcement actions against federal agencies by EPA. Just as the term "enforcement" does not have to mean judicial enforcement, neither does the term "sanctions" in Executive Order No. 12088 necessarily contemplate judicial sanctions. Certainly, we agree that Executive Branch agencies are subject to the requirements of RCRA and CERCLA. The question is what enforcement tools can constitutionally be used against them. We maintain that the constitutional scheme established by Article II and Article III calls for achieving compliance with RCRA and CERCLA within the Executive Branch and not in a judicial forum.

PHILLIP D. BRADY
*Acting Assistant Attorney General*
*Office of Legislative and*
*Intergovernmental Affairs**

---

* NOTE: This letter was drafted by the Office of Legal Counsel for the signature of the Acting Assistant Attorney General for the Office of Legislative and Intergovernmental Affairs.