John B. GRIFFITH, Kitty O. Griffith, and Patty L. Griffith, Minors, by Selelia Griffith and John B. Griffith, their parents and next friends, John V. Jackson, a Minor, by Lucille Jackson and Ted Jackson, his parents and next friends, Rose Drucilla Roland, Meg Francis Roland, Hattie Lee Roland, and Adlean Roland, Minors, by Oredia Roland and Frank Roland, their parents and next friends, Jerry L. Griffith, a Minor, by Gaynell Griffith and J. C. Griffith, his parents and next friends, John R. Horton, a Minor, by Mrs. John Griffith, his grandmother and next friend, Louis S. Young, a Minor, by Minnie Young and Charles Young, his parents and next friends, Randolph Parker, Nellie A. Parker, Ossie W. Parker, and Juanita Parker, Minors, by Mary Parker and

512

Dolphus Parker, their parents and next friends, Shirley Barnett and Coy Barnett, Minors, by Columbus Barnett, their father and next friend, David L. Henson, a Minor, by Ruby Henson, his mother and next friend, Kay F. Griffith, Stevie Griffith, and Patsy Griffith, Minors, by Thelma Griffith, their mother and next friend, Lois Ann Young, a Minor, by Fannie Mae Young and Lester Young, her parents and next friends, Carolyn Young, Milton Young, and James Porter Young, Minors, by Susie Young and Porter Young, their parents and next friends, Vivian D. Young, a Minor, by Polly Ann Young and Hubert Young, her parents and next friends, Marvin Griffith, a Minor, by Jim Griffith, his father and next friend,

and

Selelia Griffith, John B. Griffith, Lucille Jackson, Ted Jackson, Oredia Roland, Frank Roland, Gaynell Griffith, J. C. Griffith, Mrs. John Griffith, Minnie Young, Charles Young, Mary Parker, Dolphus Parker, Columbus Barnett, Ruby Henson, Thelma Griffith, Fannie Mae Young, Lester Young, Susie Young, Porter Young, Polly Ann Young, Hubert Young, and Jim Griffith, Plaintiffs,

v.

BOARD OF EDUCATION OF YANCEY COUNTY, a body corporate, Defendant.

Civ. No. 1881.

United States District Court
W. D. North Carolina,
Asheville Division.

Sept. 12, 1960.

Ruben J. Dailey, Asheville, N. C., Conrad O. Pearson, Durham, N. C., Thurgood Marshall, Jack Greenberg, New York City, for plaintiffs.

C. P. Randolph, Burnsville, N. C., for defendant.

WARLICK, District Judge.

Plaintiffs in this action seek to enjoin the defendant, the Board of Education of Yancey County, North Carolina, from discriminating against them in the Board's refusal to assign them to particular schools maintained and operated by it within Yancey County, on account of their race.

The action was instituted on November 11, 1959, against the members of the Yancey County Board of Education in their individual capacity, and the County Superintendent of Schools. On December 17, 1959, a motion was allowed permitting plaintiffs to amend the complaint to bring in the present defendant, the Board of Education of Yancey County, a body corporate, and to dismiss the action as to the individual defendants.

On the answer being filed and the case at issue, following the taking of depositions, the answering of interrogatories, and other means afforded, the cause came on for hearing at the regular July-August 1960 term in the above Division,— and from the evidence heard the following facts are found:

The Court has jurisdiction under 28 U.S.C.A. §§ 1331, 1343, as authorized by 42 U.S.C.A. §§ 1981, 1983.

The defendant Board of Education operates and maintains and supervises

under the laws of North Carolina, all of the public schools of Yancey County.

Jerry L. Griffith, one of the minor plaintiffs and Gaynell Griffith and J. C. Griffith, his parents, having removed to New York, and Juanita Parker another plaintiff, having graduated in June 1960, from the Allen High School in Asheville, are no longer parties, and the action as to them has been dismissed.

The remaining twenty five minor plaintiffs to the action are members of the Negro race and are citizens and residents of Yancey County, North Carolina and virtually constitute the entire Negro school population in said county. Each of the minor plaintiffs is within the age limit of eligibility for admission to the public schools of Yancey County in North Carolina. Eight of the minor plaintiffs are eligible for high school and seventeen are elementary school students.

The defendant Board of Education operates two high schools in Yancey County with an attendance of approximately 1,025. It likewise operates seven elementary schools with approximately 3,000 students. The elementary schools are those known as Burnsville Elementary in Burnsville, the county seat of Yancey County; Micaville, five miles east of Burnsville; South Toe Elementary School, sixteen miles southeast of Burnsville; Clearmont—eight miles north from Burnsville; Bee Log and Bald Creek, approximately eight to ten miles west of Burnsville, and Pensacola Elementary School is ten miles south of Burnsville. The two high schools, both of which are comparatively new buildings, are known as East Yancey, which is approximately 2½ miles east of Burnsville, and Cane River High, which is about five miles west of Burnsville. All of these schools, both elementary and high, are operated and maintained exclusively for white children.

Prior to the school year 1958–59, a separate elementary school containing one room was maintained in Burnsville for the children of the Negro race, however the defendant has never operated and maintained a high school for Negro children in Yancey County, and for the past several years the high school students have been transported to and have attended schools in Asheville, in Buncombe County, North Carolina. For the school year 1958–59 all of the Negro children of Yancey County were transported to schools in Asheville. This was under an agreement between the parents of the Negro school children and the defendant. Tuition was paid to the Asheville administrative unit by the defendant Board of Education for the admittance and training of these high school and elementary school students.

The distance between Burnsville and Asheville is approximately forty miles, and this necessarily resulted in a daily school trip of approximately eighty miles and required about three hours in travel each day for the round trip.

At the summer session 1958 of Yancey Superior Court the Grand Jury made a recommendation in its report, that the one room wooden frame building located in Burnsville which had theretofore been used as the elementary school for Negro children, be condemned in that in the sense of the Grand Jury it was not only inadequate but unsafe and unsanitary for elementary school children. This building was old and wholly inadequate though the defendant had recently placed new equipment therein. It had no playground facilities and was otherwise a relic of a bygone day.

The elementary grades had theretofore consisted of from 28–30 children who attended classes in one room from the first to and including the eighth grade. After approximately two months of operation during the first of the school year 1958–59, it was abandoned, whereupon all children were transported in busses to the Asheville schools. At the time of the institution of this action there were no schools for Negro children in Yancey County of any character or type, and no Negro children were attending any of the nine schools operated for white children.

Each of the buildings maintained and operated for students of the white race

is in good physical condition, and invariably have modern facilities, including in most instances, gymnasiums, recreation privileges, playing fields, and grounds, and other recognized facilities for school operation,—cafeterias, etc., and in each school where the room size would permit, the Board follows the state recommendation of thirty children per classroom. There is, however, some overcrowding in a few of the schools and this naturally can only be alleviated by the erection of new buildings or the addition to existing school properties.

Bus transportation for students is naturally extensively used in all of the schools as is done invariably in North Carolina, and the evidence discloses that the greatest distance travelled by any white student on a one way schedule is approximately twenty five miles.

The defendant Board has a double set of school zones,—one for members of the white race and one for those of the Negro race. The white children being assigned on the basis of the zone in which they live, except those living in Burnsville are privileged to attend either of the high schools in the county. The Negro children as previously set out, are transported at the present time to Asheville.

The defendant Board of Education does not use pupil performance on aptitude and achievement tests, in making its initial assignments, or transfers of white children, nor has the North Carolina Pupil Assignment Act procedure been applied for that purpose.

At the end of the school year 1958–1959, upon receipt of their report cards, from the respective Asheville schools, plaintiffs filed their application on June 16, 1959, for a change of pupil assignment with the defendant Board,—to either the Burnsville Elementary School, East Yancey High or Cane River High School.

During the year 1958–1959 Negro children, both in the elementary and high school age limits had been attending Allen High School which is a private church related school maintained in Asheville for colored children, Stephens Lee High School, and the Hill Street Elementary, and on the report cards each student had been assigned by these schools where they had been in attendance back to the same school or to the proper high school in Buncombe County, upon their graduation from an elementary school. All of the applications were individually filed and in each a transfer was sought to the proper school in Yancey County for each individual,—dependent upon their school advancement, place of abode, etc.

Among other things each application stated that the parents were taxpayers in Yancey County; that it was too far to travel to Asheville each school day; required too much time to be spent away from home; and worked not only a decided hardship upon each student, but upon their parents as well. And that these hardships were more pronounced in winter than in the fall and spring.

When the applications for reassignment were individually filed in behalf of the minors, their parents and others representing them likewise filed a petition with the defendant in which they requested that the children be assigned to schools in Yancey County,—setting out various reasons for their desire to have the children given school opportunities in that county, but primarily asserting that under the laws of North Carolina each child had the right to attend school in the county of its residence.

On August 10, 1959, the defendant for the first time publicly considered the requests for reassignment and disapproved them for that they were premature as it found, and incidentally not made in accordance with the rules and regulations required by the North Carolina law and as adopted by the Board. On the same date notice of a denial of the requests for reassignment was mailed to each individual plaintiff; and simultaneously a notice of assignment was likewise mailed to the various plaintiffs wherein it was stated that each plaintiff had been assigned to the same school in Buncombe County for the year 1959–1960 as they had previously attended in 1958–1959.

Each plaintiff thereafter requested a hearing before the Board on the denial of their application for reassignment. These hearings were granted and thereafter notice was given plaintiffs by the defendant that their various requests for reassignment were denied. Whereupon this action to assert their claimed rights was instituted.

The defendant had on several occasions following the abandonment of the one room elementary school, agreed to erect a new elementary school in Burnsville for Negro children, but at no time had it ever offered to provide a high school for such children in Yancey County; and it would appear that the failure on the part of the defendant Board to meet the obligations imposed upon it by the laws with respect to the education of Negro youth in its county has created considerable dissension, and has obviously resulted in this action.

The defendant in due time filing its answer, sets out among other things the defense of a failure on the part of plaintiffs to exhaust their administrative remedies and alleges therein that such is required by the laws of North Carolina; and further it sets up as a defense plaintiffs' failure to affirmatively allege that they have exhausted such administrative remedies before the Board, and generally denies the right of plaintiffs to maintain what it alleges in its answer is a class action.

Following the decision of the Supreme Court in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed 1083, various decisions have been handed down by the Court of Appeals for the Fourth Circuit, among them being Judge Parker's clarifying and well reasoned decision in Carson v. Warlick, 238 F.2d 724. From these cases there can be little doubt as to what the law now requires in matters of this character.

It would appear that little can now be gained by setting out the various decisions dealing with the subject of school integration, and it would seem that a further discussion here is unnecessary. It is sufficient to restate again that all of these cases uphold the constitutionality of the North Carolina Pupil Assignment Law and plainly hold that federal courts should not be called upon to interfere in the administration of the local schools until plaintiffs have exhausted their administrative remedies under the law.

While this action was being heard on July 11 and 12, 1960, I carefully studied all the pleadings, motions and various steps that had been taken since the institution of the action and of much that had transpired prior thereto; and following such study I advised counsel that I would try the case on its merits and then dispose of each of them as individual actions instituted for a recovery of the relief sought, but that I would, as a matter of convenience, consolidate the various cases for trial. The trial was had before me without a jury.

 Since each plaintiff filed individual applications and each was individually considered by the defendant and being rejected, were individually notified by defendant of such, I find that each plaintiff has fully complied with the administrative remedy that is required by the laws of North Carolina. However since each plaintiff was rejected for the same or similar reasons and each sought in the application the identical relief, it would certainly seem that having exhausted their administrative remedies that they would have the right under the law to maintain a class action in the federal courts in behalf of themselves and others likewise qualified. Carson v. Warlick, 4 Cir., 238 F.2d 724.

For as said by the Court of Appeals in Covington v. Edwards, 4 Cir., 264 F.2d 780, 783:

"This conclusion does not mean that there must be a separate suit for each child on whose behalf it is claimed that an application for reassignment has been improperly denied. There can be no objection to the joining of a number of applicants in the same suit as has been done in other cases. The County Board of Education, however, is entitled under

the North Carolina statute to consider each application on its individual merits and if this is done without unnecessary delay and with scrupulous observance of individual constitutional rights, there will be no just cause for complaint."

In addition, the record in this case is replete with evidence that, had plaintiffs not exhausted their administrative remedies, that to have done so would have been a futile and vain thing,—the evidence indicating many dilatory tactics and evasions on the part of the defendant which obviously denied plaintiffs, citizens of the United States, their rights under the Constitution.

Following the institution of this action the defendant purchased a tract of land in Burnsville and through a loan from the State Literary Fund erected a two room building for Negro children in Burnsville, and named it the Oak Crest School. It was completed some time in the summer of this year. This building I am told, is well constructed, contains facilities for use and can be classed as modern, though small. A petition divides the building into two rooms. Two teachers have been employed and each possesses the educational qualifications as required by the North Carolina law. Subsequent to the trial herein and prior to August 23, 1960, the defendant assigned all of the Negro children in Yancey County, for the 1960–61 school year, to said school, without regard to their ages or grades in school.

Following such notice of assignment of plaintiffs to Oak Crest School, and on August 23, 1960, each plaintiff filed a motion requesting leave to amend the complaint in this action and seeking a temporary restraining order and a permanent injunction enjoining the defendant from assigning all of the minor plaintiffs to this Oak Crest School, solely on account of their race.

■ Being of the opinion that plaintiffs were entitled so to amend their complaint, such amendment is accordingly allowed to cover the school year 1960–61.

■ On the foregoing findings of fact as required by Rule 52, Fed.Rules Civ. Proc., 28 U.S.C.A., I conclude as a matter of law that the defendant was without legal authority to assign plaintiffs to the schools outside of Yancey County. Nowhere in the Pupil Enrollment Act, G.S. §§ 115–176 through 179 do I find any authority for such acts on the part of the defendant. Therefore I conclude that the assignment on August 10, 1959, by the defendant of the plaintiffs to the schools in Buncombe County was without authority and of no effect, and one can reach only one conclusion,—which is that the refusal to admit these plaintiffs to the public schools in Yancey County comes about by reason of their race and color. Certainly it could not be said that the Board could in any way justify operating schools for the white children of the county and at the same time sending the Negro children outside the county. Plaintiffs have a legal right to the enjoyment of the opportunities in the county of their residence and the administrative Board cannot justify requiring their resort to opportunities elsewhere. State of Missouri ex rel. Gaines v. Canada, 305 U. S. 337, 59 S.Ct. 232, 83 L.Ed. 208.

■ The action of the defendant Board in assigning the minor plaintiffs out of the county to schools in Asheville and the refusal to admit these plaintiffs to the schools in Yancey County for the 1959–60 term was discriminatory, unlawful and in violation of the constitutional rights of the plaintiffs.

Coming now to the assignment made of all the plaintiffs for the school year 1960–61, to the Oak Crest School, a two room elementary building recently completed, a different situation evidently arises.

■ However one can have but one conclusion when you consider the eight high school students. It is clearly evident that from the ages of these students which are from 13 to 19, that at least some of them would be in different classes, and that likely all four high school grades would be needed. To require these plaintiffs of high school age to attend the Oak Crest School to which

they were assigned by the defendant would certainly be discriminatory to them and in my opinion unlawful and in violation of the constitutional rights of these plaintiffs eligible for high school attendance; and since there are only two properly accredited high schools in Yancey County, it would seem that the law would require the defendant to assign these plaintiffs to one or the other of these two high schools as maintained by it.

It is therefore ordered that the motion for an interlocutory injunction be granted and that the defendant assign the eight high school plaintiffs within thirty (30) days following the filing of this opinion, to either or both of the high schools maintained by the defendant in Yancey County under the authority given it in G.S. § 115–176.

As to the seventeen minor Negro plaintiffs who are of elementary school age, a different situation arises. Burnsville Elementary School as it now appears is overcrowded. One of the two buildings constituting this elementary school and used for class room work was constructed in 1910 and does not fully meet the requirements as recommended by the State Department of Public Education,—and inspectors have recommended that it be replaced with a modern building, and that it not be renovated nor remodeled. This building contains twelve of the twenty class rooms of the Burnsville Elementary School. The other building was constructed in 1938 and contains eight class rooms. Some of the hallway space as well as a part of the basement has been partitioned off and is presently being used for class room space.

Then when you give consideration to the Oak Crest School and consider it as a part of the Burnsville Elementary system, it offers at least a two room addition to the existing facilities. One would be naive not to feel that Oak Crest was constructed for the sole use of the Negro children of Yancey County who possess the elementary school qualifications, and on its face it would appear that the Board is attempting to maintain a policy of segregation. Whatever the policy of the Board may be, the only idea that I have in mind is seeing that the rights of the various parties to this controversy are fully protected under the law, and to determine what is fair and just. We are dealing here with a mountain county having approximately 16,000 people, with little industry, and dependent almost entirely upon farming and allied works.

▪ Accordingly in the light of the overcrowded Burnsville Elementary School and the construction of the new Oak Crest elementary school, I am of the opinion that the matter of the assignment of the minor plaintiffs qualified for admittance to the elementary schools of Yancey County should be reconsidered by the Board. The Board shall therefore within thirty days from the filing of this opinion meet and assign the minor plaintiffs to either Oak Crest Elementary or Burnsville Elementary and will submit to the court within such time a list of these plaintiffs together with the name of the school to which assigned, and at the same time notify the parents or those standing in loco parentis of the plaintiffs. In assigning these plaintiffs to the elementary schools the Board will give consideration to the location of these schools, the distances involved, so as to provide for the orderly and efficient administration of such schools, and provide for the effective instruction, health, safety and general welfare of the pupils assigned to such school.

With this directive being made the court holds that this matter is to be retained for further examination and reappraisal at some future date during the school year,—all to the end that these minor plaintiffs be given that educational privilege which the law affords.

Counsel will submit decree carrying into effect this decree.