Priscilla MORROW, a Minor by Charlton A. Morrow, her father, et al., Plaintiffs,

v.

MECKLENBURG COUNTY BOARD OF EDUCATION, North Carolina Advisory Committee on Education and North Carolina State Board of Education et al., Defendants.

Civ. A. No. 1415.

United States District Court W. D. North Carolina, Charlotte Division.

June 15, 1961.

T. H. Wyche, Charlotte, N. C., Conrad O. Pearson, Durham, N. C., Thurgood Marshall, Jack Greenberg, Derrick A. Bell, New York City, for plaintiffs.

McDougle, Ervin, Horack & Snepp, Brock Barkley, Charlotte, N. C., for Mecklenburg County Board of Education. C. Eugene McCartha, Charlotte, N. C., on the brief.

William T. Joyner, Raleigh, N. C., for defendants Members of North Carolina Advisory Committee on Education.

Malcolm B. Seawell, Atty. Gen. of North Carolina, Ralph Moody, Asst. Atty. Gen., for members of North Carolina State Board of Education.

WARLICK, Chief Judge.

This is a civil action instituted by the fathers of eight Negro children, seeking

to enjoin the defendant, the Mecklenburg County Board of Education from refusing to reassign the minor plaintiffs to certain schools within the Board's jurisdiction, on account of their race and color. Originally when the action was instituted plaintiffs sought a judgment of restraint and other relief from the defendant, Mecklenburg County Board of Education and its individual members, and additionally made parties defendants certain former members of said Board, —the North Carolina Advisory Committee on Education,—its Chairman and Vice-Chairman, and its individual members were likewise made defendants, and additionally the North Carolina State Board of Education, together with each of its members was added to that long list of those named as defendants. However, all of the defendants were eliminated at various times during the progress of the cause save and except the defendant, The Mecklenburg County Board of Education, which was and is the only defendant against whom a valid judgment could have been had under the pleadings filed.

Jurisdiction for the action as alleged in the complaint is based on 28 U.S.C.A. § 1331, as an action arising under the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C.A. § 1981. In addition, jurisdiction is invoked under 28 U.S.C.A. § 1343, as an action authorized by 42 U.S.C.A. § 1983. The plaintiffs assert it to be a class action authorized by Rule 23(a) (3) of the Federal Rules, 28 U.S.C.A., as there are common questions of law and fact affecting the rights of all other Negro children attending the public schools of Mecklenburg County, and their respective parents and guardians, who, are so numerous as to make it impracticable to bring all before the court. This the defendant denies, and alleges that it relies upon Article 21 of Chapter 115 of the North Carolina General Statutes (The Assignment and Enrollment of Pupils Act), and has accordingly considered each child as an individual entity.

The basic and essential facts are not in dispute.

The plaintiffs are members of the Negro race and are citizens and residents of Mecklenburg County, North Carolina, and each of the minor plaintiffs is eligible for admission to the public schools of Mecklenburg County.

At present all of the minor plaintiffs attend Torrence Lytle School which at the times complained of in the complaint and since, is a consolidated type school, offering grades one through twelve. It was and is attended solely by members of the Negro race. It is located approximately nine to eleven miles from the respective homes of the plaintiffs.

The defendant Mecklenburg County Board of Education is a body corporate under and by virtue of Chapter 115, Section 27, General Statutes of North Carolina. At the times set out in the complaint, and up to July 1, 1960, the defendant had jurisdiction of all public schools in Mecklenburg County which were located outside the corporate limits of the City of Charlotte. On July 1, 1960, the Charlotte City Board of Education, pursuant to the provisions of Chapters 378 and 556, Session Laws of North Carolina, 1959, was merged into the defendant, and since that date the defendant Board has had jurisdiction of all schools in Mecklenburg County, including those schools formerly operated under the jurisdiction of the Charlotte City Board of Education.

Following the decision of Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873, the North Carolina General Assembly enacted the Assignment and Enrollment of Pupils Act (G.S. §§ 115–176 through 115–179) which had as its purpose vesting these matters solely in the hands of the local school authorities. In handling the assignment of pupils the local boards are required to adopt enrollment practices which will "provide for": (1) "Orderly and efficient administration" of the schools; (2) "effective instruction", (3) "health," (4)

"safety," and (5) "general welfare" of the pupils.

On August 2, 1957, the defendant Board, pursuant to this Act, for the first time adopted a formal resolution assigning students to schools for the 1957–1958 school year. Generally, the students were assigned to schools which they had attended the previous year or at which they had attended "Pre-School Clinics" conducted by defendant Board at all the schools. On or about August 7, 1957, the minor plaintiffs were assigned by defendant Board to the Torrence Lytle School. Notice of the assignment was given to the plaintiffs under the provisions of N.C.G.S. § 115–177. The plaintiffs, through their parents, in apt time applied for reassignment to Derita Elementary-Junior High School (N.C.G.S. § 115–178), and the applications were denied by defendant Board on August 22, 1957. On August 26, the plaintiffs requested review of the denial, and on August 30, a hearing was held on said requests for reassignment and the minor plaintiffs and one or both of the parents of each were present. They were represented by counsel, and a quorum of the Board was in attendance. On September 3, 1957, the Board denied the application of each of the minor plaintiffs, properly notifying them of this decision, and during the 1957–1958 school year, the minor plaintiffs attended Torrence Lytle School.

All of the minor plaintiffs were again assigned to Torrence Lytle School by defendant, The Mecklenburg Board, on June 1, 1958, for the school year 1958–1959. The infant plaintiffs, through their parents made application for reassignment to the Derita School except that Frank Boyce submitted an application on behalf of Frank Boyce, Jr., for reassignment to North Mecklenburg High School. The requests for reassignment were denied by defendant Board on June 26, 1958, and plaintiffs requested review of this denial on June 30. The hearing was held on August 6, 1958, and the appeals were denied by defendant Board on August 25, 1958.

The Derita School to which the plaintiffs sought reassignment is located approximately one and one-half miles from their homes. At the time complained of in the complaint, it offered grades one through nine, and was attended solely by students of the white race. During the 1960–61 school year Derita School offered grades one through seven, and was likewise attended solely by white students.

The minor plaintiffs are transported by bus to Torrence Lytle School as the defendant Board operates a bus system for students living more than one and one-half miles from their schools as required by law. N.C.G.S. § 115–186(b). Bus service would not have been afforded these plaintiffs had they been assigned to Derita School because of their nearness to the school.

North Mecklenburg School to which Frank Boyce sought reassignment of Frank Boyce, Jr., offered grades ten through twelve at the time complained of in the complaint and also at present. It is located approximately seven miles from the home of plaintiff Boyce.

Each of the minor plaintiffs was assigned to Torrence Lytle School for the school year 1959–1960, and also for the school year 1960–1961, with no application for reassignment having been made on behalf of any of them for *either year*. At Torrence Lytle School they now attend the grades which are set opposite their names below:

| Priscilla Morrow | 5th grade |
|---|---|
| Doris Hunter | 6th grade |
| Barbara Dianne Boyce | 6th grade |
| Howard Eugene Boyce | 4th grade |
| Foster Hunter | 10th grade |
| Frank Boyce, Jr. | 12th grade |
| Clarence Edward Boyce | 9th grade |
| Jerry Nathaniel Boyce | 10th grade |

Seemingly the desire of every young person in America for an education has inspired the respective agencies in each of the several states to do their dead level best to make such available to those young people who seek the privilege of attending school. North Carolina is par-

ticularly proud of its position in the educational field in America. Its aim is quality education for all.

For the first three months of the 1960–61 school year there was enrolled in the public schools of North Carolina 1,111,014 boys and girls of school age. Those in charge of administering the educational affairs of the state have become deeply wedded to the consolidated school principle, and have accordingly deemed it the part of a wise school administration to so consolidate high schools as to permit them to take care of a given number of elementary schools, all making for a system of transportation by school bus of the children from their homes to the schools attended, and return each day.

540,000 children are being transported daily by bus to public schools in North Carolina. In order to complete this program of transportation some pupils are transported, as the necessity may arise, as great a distance as 40–50 miles one way each day. North Carolina operates 8,383 school busses and these busses travel each school year in the aggregate amount of 54,000,000 miles.

There are 227 school busses operated in Mecklenburg County by the State of North Carolina. Mecklenburg has 96 public schools, each of which is under the control of the defendant. There are enrolled in the public schools of Mecklenburg County 61,226 pupils, and this out of a population of 272,111.

This vast enterprise is conducted by ten members who constitute the defendant Board. They are the successors in membership to the old County and City Boards prior to July of 1960. The membership of defendant is nonpartisan, with each member being nominated at the time of the holding of the State Wide Primary,—their names appearing on a separate ballot. None of the Board members receives any salary and the small per diem that is granted is often not accepted, as each member seemingly considers his service on this Board as a gratuity and worthy of his time and effort.

One cannot but be impressed with the personnel of this Board. It includes an outstanding minister of the gospel,— an attorney whose practice is statewide, —an executive of a vast chain store organization that extends into 15–20 states of our Union, and others whose positions in the life of Mecklenburg County are high in leadership and outstanding in ability. They must be motivated by a desire to aid their community else they surely would duck this type of service.

The plaintiffs contend that though the defendant Board purports to maintain a system of permitting transfers among schools without regard to race, the system it maintains in fact implements a policy of racial discrimination; that the Board's policy is to maintain a segregated school system which is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Factually, the plaintiffs argue that there were white students attending Derita School who lived as many as six miles further away than the plaintiffs; that the Board, after considering all available information concerning the minor plaintiffs, failed to provide standards by which it would weigh objectively and evaluate the information it studied in order to grant or deny transfers; and that the Board at times permitted the Superintendent to make transfers for the school year 1958–1959 of both Negro and white children without Board action for administrative reasons, such as change of residence, utilization of available classroom space, and availability of bus transportation, but that all of these were from Negro to Negro schools and white to white schools.

The defendant Board contends that it has no policy of maintaining a segregated school system, but that by custom and by choice, students of different races have attended different schools. The Board states that it had no applications for reassignment after those of 1958 until 1960 at which time the Board assigned both originally and upon request

for reassignment Negro students to formerly all white schools, with members of the Board who were members at the time complained of in the complaint voting to grant the 1960 request.

The defendant asserts that distances from a school had never been a determinative factor in the assignment of any student to a particular school as the laws of the State provided for the extensive use of school busses, and that in both years that the plaintiffs sought reassignment, the Board was faced with the problem of overcrowding at the Derita School, where six rooms which had not been designed or arranged for classrooms were being used as such to accommodate the large number of students assigned there. In addition, a busload of students within the statutory "walking distance" of Derita School was being transported to a more distant school in order to relieve the situation at Derita. On the contrary the evidence shows that there are no crowded facilities or lack of accommodations at the Torrence Lytle School.

There seems no point in belaboring the question as to the constitutionality of the North Carolina Pupil Assignment Law as this question has been affirmatively decided by the Fourth Circuit Court of Appeals and by the North Carolina Supreme Court. Carson v. Warlick, 238 F.2d 724; Covington v. Edwards, 264 F.2d 780; Joyner v. McDowell County Board of Education, 244 N.C. 164, 92 S.E.2d 795. From these decisions it is clear that the Federal Court is not authorized to act until the administrative remedies have been properly sought and it is shown that the Act is being unconstitutionally administered. After the hearing and final decision thereon, if one is not satisfied, and can show that he has been discriminated against because of his race, he may then apply to the Federal Court for relief. Covington v. Edwards, supra. This procedure has been followed by the plaintiffs in this action and there need be no objection to the joining as plaintiffs of all the named applicants for transfer as the relief sought by each is identical. However, as to whether the action is applicable to others similarly situated as a class action, is not borne out by the evidence. There has been no showing that others have been denied reassignment after an exhaustion of their administrative remedies provided by the Pupil Assignment Law, and therefore the court will consider only the eight minor plaintiffs named in the complaint.

From the record it appears that Frank Boyce, Jr. is a senior in high school, scheduled to graduate in June of 1961, and presumably received his diploma. He, therefore, is obviously precluded from consideration in this matter as the fall semester of 1961 is contemplated as the effective date of this decision. Additionally, it is noted that Foster Hunter, Clarence Edward Boyce, and Jerry Nathaniel Boyce are no longer eligible for enrollment in the Derita School to which they sought reassignment in their complaint, in that they have now finished the grades available at Derita. This does not necessarily preclude them from reassignment as evidently the class to which they sought reassignment has moved on to another school in the expanding school system; however, under the North Carolina Pupil Assignment Law, each individual child must petition and show his individual basis and circumstance meriting reassignment to a particular school. As that aspect would be missing it would be a rather presumptious sort of thing for this court to usurp the School Board's authority, delegated to it by the North Carolina General Assembly, and determine whether these three minor plaintiffs are entitled to reassignment to a school other than the one they presently attend, and other than the one to which they originally sought reassignment.

Turning to the four remaining children, the issue is whether they were discriminated against because of their race by the Board's refusal to grant their requests for reassignment. Thus the central point in controversy is whether the provisions of the North Carolina Pupil Assignment Act were unconstitutionally applied to the plaintiffs in 1957

and 1958. After a careful study of the evidence, the court is of the opinion that the defendant Board has conscientiously complied with the requirements placed upon it, and that the plaintiffs have failed to show wherein they were discriminated against because of their race. In their requests for reassignment, the plaintiffs all state as their reasons therefor that they lived closer to the Derita School than to the Torrence Lytle School, and that they desired a desegregated education. It has been defendant's position throughout that distance from a school has never been a determinative factor in the assignment of pupils because of the extensive use of busses throughout the State and county, all as has been set out heretofore.

The plaintiffs allege that Negro children entering school for the first time are required to attend "pre-school clinics" in schools attended only by Negro pupils; however, the record is devoid of any evidence showing this to be true, and the evidence in fact discloses that children attend the school to which they are presented on a basis of individual choice by their parents; that defendant Board has issued no directives stating the schools to which particular children should be presented for enrollment; and the evidence does not disclose that any Negro child was ever denied enrollment in any school under the Board's jurisdiction.

As for the plaintiff's assertion that the North Carolina Pupil Assignment Law is made applicable only to Negro children, this is not substantiated by the record, for that in answer to the plaintiff's interrogatories, the defendant attached several such requests made by white students, all of which requests were denied. The plaintiffs have clearly failed to show that defendant Board has made a deliberate attempt to thwart their constitutional rights as appeared in the case of Farley v. Turner, 4 Cir., 281 F.2d 131, and the case of Gibson v. Board of Public Instruction, 5 Cir., 272 F.2d 763.

Then too, the Supreme Court stated in substance in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, that opposition to desegregation was not alone a sufficient reason to postpone integration. But, the Court also stated in substance in the first Brown decision, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, that one of the factors that the trial court could consider in resolving the question is the interest of the people who are affected in the community; therefore, the circumstances as they existed in 1957 and 1958 are important in determining whether the individual plaintiffs have been discriminated against. The Board faced with the obligation of operating a large school system was also for the first time acting under the North Carolina Pupil Assignment Act. The 1957 applications for reassignment were the first to be received by defendant Board from Negro students seeking transfer to schools which had been attended only by members of the white race, and it was only natural that the Board approached the matter with extreme caution. The evidence shows that a careful study was made of each individual applicant in order to determine the possibility of making the transition with a minimum of ill effect upon the individual child and upon the school system, and although it may have proved of value to the Board in ascertaining the attitude and desire of each child, the children's parents gave little help and did not allow them to be questioned by the Board members at the hearings which were held in both of the years in question and denied the right of the Board to make inquiry of the children.

Naturally the maintenance of a dual system based on race offends the constitutional rights of the plaintiffs; however the Supreme Court points out in the second Brown decision, 349 U.S. 294, 75 S.Ct. 753, 756, 99 L.Ed. 1083: "School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing Constitutional principles."

No truer statement of the position of school officials and their responsibility

to the pupils in the schools following the Brown decision could have been made in a more understandable way, or as a finer legal doctrine, than that written by Chief Judge Parker when he said:

"Somebody must enroll the pupils in the schools. They cannot enroll themselves; and we can think of no one better qualified to undertake the task than the officials of the schools and the school boards having the schools in charge. It is to be presumed that these will obey the law, observe the standards prescribed by the legislature, and avoid the discrimination on account of race which the Constitution forbids. Not until they have been applied to and have failed to give relief should the courts be asked to interfere in school administration." Carson v. Warlick, 238 F.2d 724, 728.

Integration in the public schools in the City of Charlotte is not new for that through the years following the Brown decision quite a number of Negro children have been integrated into white schools and a feeling of accord and understanding has evidently grown up in Charlotte and Mecklenburg County regarding the status of school children.

North Carolina has likewise followed a similar course and one among the best instances of such is to be found in the case of Griffith v. Board of Education of Yancey County, D.C., 186 F.Supp. 511, a decision written by the undersigned judge, in which eight Negro children were integrated into the white high schools of Yancey County, North Carolina, without difficulty and were accepted in good faith by the community as a whole.

Accordingly it is the opinion of this court that, in the light of the conditions existing at the times complained of, the defendant Board acted in good faith in denying the requests for reassignment and that it acted fairly and justly toward these plaintiffs, and not discriminatorily because of their race or color.

I conclude as a matter of law:

The court has jurisdiction of the subject matter and the parties. 28 U.S.C.A. §§ 1331, 1343, as authorized by 42 U.S. C.A. §§ 1981, 1983.

The plaintiffs have failed to show that they are entitled to any injunctive relief against the defendant.

The plaintiffs have failed to show that the defendant Board has unconstitutionally applied the provisions of the North Carolina Pupil Assignment Act in such a manner as to discriminate against them because of their race or color.

Counsel will submit decree in accordance with this opinion.