Candance Elain **BOWDITCH** et al., Appellants,

v.

The **BUNCOMBE COUNTY BOARD OF EDUCATION**, a public body corporate, Appellee.

No. 9628.

United States Court of Appeals Fourth Circuit.

Argued Nov. 5, 1964.

Decided April 7, 1965.

Sobeloff, Chief Judge, and J. Spencer Bell, Circuit Judge, dissented in part.

Derrick A. Bell, Jr., New York City (Ruben J. Dailey, Robert L. Harrell, Asheville, N. C., Conrad O. Pearson, Durham, N. C., J. LeVonne Chambers, Charlotte, N. C., Jack Greenberg, James M. Nabrit, III, and Melvyn Zarr, New York City, on brief), for appellants.

Lawrence C. Stoker, Asheville, N. C., for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

HAYNSWORTH, Circuit Judge:

This is another school case in which Negro plaintiffs appeal from an order approving a plan for the desegregation of the schools of Buncombe County, North Carolina, as modified by the District Court. We find the plan basically acceptable, though we think it should have been modified in additional respects before it was approved.

Buncombe County is located in western North Carolina. Asheville is its county seat. The City of Asheville is a separate school district. It operates all the schools within the limits of the City, while the remainder of Buncombe County comprises a separate school district governed by a school board which operates all other public schools in the county. The Buncombe County School Board operates some twenty-five elementary schools and six high schools, which are attended by approximately 20,000 children. Only 500 of the 20,000 are Negroes.

In 1963, the white and Negro primary grade pupils in Buncombe County attended separate schools operated by the School Board. The Board did not have a high school for Negroes, however. Negro high school pupils residing in the county [1] were transported by bus to Stephens Lee High School in Asheville, which is operated by the city board. They attended that school under an arrangement which the two boards had effected between them. Stephens Lee High School in Asheville was said to have been "terribly overcrowded," and some county pupils attending it had to be transported from homes as far away as eighteen miles.

In 1963, twenty-two Negro pupils applied to the Buncombe County School Board for transfer to schools previously attended solely by white pupils. Twelve of these applications were for transfers to the first three grades of Haw Creek Elementary School. Those twelve were granted; the remaining ten were denied.

During the spring of 1963, the Buncombe County School Board orally adopted a desegregation plan. Later, it was reduced to writing and, early in 1964, was published in newspapers circulating in the county. It provided for desegregation in successive steps, which would not be complete until 1967–68. The District Judge shortened the steps to require their completion by 1966–67, but accepted the substance of the plan and approved it as modified.

As modified, the plan provides that every first grade pupil will be assigned to the school nearest his home. In addi-

1. The word "county" is used to describe that portion of Buncombe County which is outside the City of Asheville.

tion, any pupil in grades 2 through 8 may request a transfer for the school year 1964–65 to the school of his choice within his attendance area. Transfers under the plan are to be routinely granted, and are to be applied for on forms made readily available. Such transfer rights will be extended through the tenth grade for the school year 1965–66, and through the twelfth grade for the school year 1966–67. By 1966–67, under the plan, therefore, every pupil in Buncombe County who was not attending the school of his choice in his attendance area would have the right, upon request, to attend that school, while students entering the school system for the first time would be routinely assigned to the nearest school in his attendance area.

The plan provided that transfer requests must be filed within ten days after receipt of report card assignments.

The plaintiffs have no complaint about attendance areas and the operation of the plan as applied to first grade pupils. Nor do they question the absolute right of a pupil now attending a segregated school in the system to transfer out upon request. They do object to the plan on the ground that a pupil now in a segregated school will not be transferred out unless he requests it, and to the delay in the plan's application to the higher grades.

With respect to the high school pupils, we think the objection well founded. Those pupils are being bussed, some of them long distances, to a very overcrowded, segregated school outside of the administrative district in which they live.

Long before enforced segregation itself was declared to be unconstitutional, it was recognized that the Fourteenth Amendment's equal protection clause required at least equal facilities for the races. This was the doctrine of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256. In accordance with the principles of that case as they had been applied in Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208, this Court held in 1949 that Pulaski County, Virginia, could not constitutionally exclude Negroes from schools it operated, though it had been transporting them to neighboring Montgomery County and paying the cost of their attendance at a public school there.[2] A similar case again came before the Court after enforced segregation had been declared unconstitutional. We there declared that exclusion of Negroes from Warren County, Virginia's, only high school and transportation of them to schools in neighboring counties was, "(b)y any possible test * * * legally indefensible * * *."[3] Still, more recently, we described such a practice as "discrimination in a most pernicious form."[4]

Buncombe County's discrimination against its high school pupils, therefore, was far more aggravated than its discrimination against other pupils. The complete exclusion from its six high schools of all Negroes of high school age solely because of their race, and their resultant transportation over long distances to an overcrowded school in another school district, entitled them to primary consideration.

There are only 150–160 Negro high school pupils living in the county and attending Stephens Lee in Asheville. There are almost 6,000 white pupils in Buncombe County's high schools. A transfer of so few, or those of them who wish to transfer, to high schools in the county could hardly create administrative difficulties warranting long postponement of the plan's application to them. Under the step plan, however, they are the very ones who will be the

2. Corbin v. County School Board of Pulaski County, Virginia, 4 Cir., 177 F.2d 924.

3. School Board of Warren County v. Kilby, 4 Cir., 259 F.2d 497, 498.

4. Buckner v. County School Board of Greene County, Virginia, 4 Cir., 332 F. 2d 452, 455; see also Griffith v. Board of Education of Yancey County, W.D.N.C., 186 F.Supp. 511.

victims of delay. Transfer rights will not be extended to the 9th and 10th grades until next year and to the 11th and 12th grades until the year after. Since they stand in special need of remedial treatment, means should have been sought to prefer them. The plan's deferment of enjoyment of their rights cannot be justified in the absence of compelling reasons for it.

The record shows no administrative problem arising from the need to accommodate the additional handful of pupils which could not be resolved at least by the opening of the next school year. If they all sought to transfer to the same one of Buncombe County's six high schools, difficulties might arise which would require that some of them be relegated to other alternatives. General overcrowding in all six high schools, however, cannot justify the total exclusion of Negro pupils when the much more numerous white pupils are all accommodated.

■ With the elimination of further delay in the plan's application, it becomes approvable. It has eliminated all discrimination in the original assignment of first grade pupils and those others entering the system for the first time. Every other Negro now attending a segregated school has an unrestricted right to transfer to a school attended by white pupils. Every pupil moving from an elementary school to the high school level will be routinely assigned to one of the County's six high schools.[5] This type of voluntary plan is adequate to accomplish a legal desegregation of the schools.

We have considered the question at length in Bradley v. School Board of City of Richmond, Virginia, 4 Cir., 345 F.2d 310 (decided this day). For the reasons stated there, we think the modified plan, when further modified in accordance with this opinion, approvable.

■ The plaintiffs also complain that the District Court did not order a general reassignment of all teachers and administrative personnel on a nonracial basis. There has been no inquiry into that matter in the District Court, and the failure of the District Court here to enter an order in accordance with this request of the plaintiffs is affirmed for the reasons stated in Bradley v. School Board of City of Richmond, Virginia, 4 Cir., 345 F.2d 310 (decided today).

For the foregoing reasons, we, generally, affirm the order of the District Court when modified and changed in accordance with the requirements of this opinion.

Affirmed in part, reversed in part and remanded.

SOBELOFF and J. SPENCER BELL, Circuit Judges (concurring in part and dissenting in part):

For ten years after the decision in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 not only did the Board of Education of Buncombe County continue to operate its schools on a segregated basis, but it administered the county high schools in a manner which failed even to comply with the old "separate but equal" doctrine of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896). Under these circumstances, we are of the opinion that although the District Court retained jurisdiction of the case "to consider the implementation and good faith administration of the plan" it erred in failing to enjoin the Board of Education from engaging in racial discrimination. The court's finding that "this is not a recalcitrant Board of Education but one which is attempting to comply with the law" was not a sufficient ground for denying injunctive relief. Until the Board of Education has shown its good faith by deeds as well as words, an injunction is required. Brooks v. Arlington County,

---

5. If the plan does not make this entirely clear, it should be made so as a condition of approval. If a Negro graduate of one of the county's elementary schools should affirmatively seek admission to Asheville's Stephens Lee School, the county is not required to hinder him, but it may not assign him there against his wishes.

324 F.2d 303 (4th Cir. 1963); and see our separate opinion in Bradley v. School Board of City of Richmond, decided today.

The District Court ruling that plaintiffs had no standing to raise the issue of segregated faculties and administrative personnel was clearly erroneous. Bradley v. School Board of City of Richmond, 4 Cir., 345 F.2d 310, decided today; Griffin v. Board of Supervisors of Prince Edward County, 339 F.2d 486 (4th Cir. 1964); Jackson v. School Board of the City of Lynchburg, 321 F.2d 230 (4th Cir. 1963); Board of Public Instruction of Duval County v. Braxton, 326 F.2d 616, 620 (5th Cir. 1964). We agree that the case should be remanded to the District Court, and on remand an evidentiary hearing should be held on this issue. The District Court may then decide whether the relief prayed for is appropriate.

Except as above indicated, and subject generally to the views set forth in our separate opinion in the Richmond case, we concur.